Joshua L. Thomas, Esq.
Joshua L. Thomas & Associates
225 Wilmington-West Chester Pike, Suite 200
Chadds Ford, PA 19317
Phone: 215-806-1733
Fax: 888-314-8910
Email: JoshuaLThomas@gmail.com
Attorney for Plaintiff

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHARLA HOLDER; and<br><br>DAVID HOLDER;<br><br>     Plaintiff(s),<br><br>     v.<br><br>BANK OF AMERICA NATIONAL ASSOCIATION as successor by merger to BAC HOME LOANS SERVICING, LP f/k/a COUNTRYWIDE HOME LOANS SERVICING, LP;<br><br>COUNTRYWIDE HOME LOANS, INC. d/b/a AMERICA'S WHOLESALE LENDER;<br><br>DITECH FINANCIAL, LLC f/k/a GREEN TREE SERVICING, LLC; and<br><br>THE BANK OF NEW YORK MELLON in its individual capacity and as trustee for the CERTIFICATE HOLDERS OF CWMBS, INC., CHL MORTGAGE PASS-THROUGH TRUST 2005-30, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2005-30;<br><br>     Defendant(s), | CIVIL ACTION NO.:  18-13095<br><br>*Civil Action*<br><br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff, CHARLA HOLDER and DAVID HOLDER, by and through undersigned counsel, hereby submits this Complaint against Defendants, and in support thereof, states as follows:

## NATURE OF ACTION

This action arises from a transaction dated October 14, 2005 that was presented to and signed by the Plaintiffs who, at the time, were led to believe was a traditional original purchase "mortgage loan", requiring the Plaintiff's to pledge their real property as collateral in return for the purported lender suffering a real loss upon loaning its money to the Plaintiffs from the alleged lender's reserves for which the Plaintiff agreed to repay within 360 monthly installments of principal and interest.

What the Plaintiffs did not know as of October 14, 2005, later discovered, and have yet to fully comprehend absent meaningful discovery and subpoenas, is that what was presented to be a traditional original purchase mortgage loan was, in reality, an unconscionable – predatory – securities transaction wherein the Plaintiffs were unknowingly converted from mortgagors into securities issuers, and their signature(s), personal identifying information, and real property served as the "bloodline" for a multi-trillion dollar derivatives scheme fueled by the Defendants and their non-party affiliates which underlies the Financial Crisis of 2008, and an economic catastrophe awaiting in the midst of the "shadow banking economy" for which the average soul has not a clue.

Hence, for nearly thirteen years and to present date, the Plaintiff's "American Dream" of Home Ownership, the right to engage in honest and fair dealings, and the right to maintain property

free and clear from unwarranted seizures by strangers[1], has turned into a nightmare upon the persistent and unrelenting unfair – deceptive - unlawful practices by the Defendants and their non-party affiliates in their concerted attempt to steal the Holder's property and extort monies from an unlawful debt, using forged and falsely acknowledged instruments, misrepresentations and concealment.

While the Plaintiffs do not dispute the fact that money appeared as a result of the transaction subject of this complaint, the Plaintiffs do, however, dispute the substance and legality of that transaction, and avers that the egregious, malicious, and willful misconduct by the Defendants and their non-party affiliates in their effort to extort monies from the Plaintiffs pursuant to the fraud *in factum* transaction complained of herein, under the duress of unlawfully taking the Plaintiff's property through two illegal foreclosure debt collection actions commenced and prosecuted in the State Court of New Jersey by the Defendants using false pleadings, creating – recording – and / or trafficking falsely made – forged – and / or counterfeit monetary instruments, and tampering with and fabricating evidence before the State Court in violation of applicable laws and consent judgments entered against the Defendants and their non-party affiliates, prohibiting further engagement in the unfair, deceptive, and unlawful practices complaint of herein.

Hence, the Defendant's conduct as set forth immediately below, is the proximate cause of the injuries complained of within.

---

1 *"Nemo dat quod non habet."* Citing <u>Mitchell v. Hawley</u>, 83 U.S. 16 Wall. 544 544 (1872).

## PARTIES

1.      Plaintiffs, CHARLA HOLDER ("Mrs. Holder") and DAVID HOLDER ("Mr. Holder), collectively referred to as "the Holder's", are individual residents of the State of New Jersey, wife and husband, and owners of the real property known as 602 Hanson Avenue, Piscataway, NJ 08854 ("subject property"), the title of which is currently encumbered by two security instruments in dispute which, upon Plaintiff's information and belief, are fraud *in factum*, unconscionable, predatory (per se), and unenforceable under state, federal, and common law for the matters of fact set forth below.

2.      Upon information and belief, Defendant Bank of America, National Association ("BANA") is a privately held subsidiary of non-party to this complaint Bank of America Corporation ("BOA-Co"), and a national banking association formed under the laws of the United States.  Upon information and belief, Defendant BANA is the successor of BAC Home Loans Servicing, LP ("BAC") by merger to Countrywide Home Loans Servicing, LP ("CHLS"), and the successor of Countrywide Bank, National Association ("Countrywide Bank").  Defendant may be served with process of this court upon Brian T. Moynihan as Chief Executive Officer ("CEO"), or upon any officer or authorized agent at Defendant's principal place of business located at 100 N. Tryon St., Charlotte, NC, 28255.

3.      Upon information and belief, Defendant Countrywide Home Loans, Inc. ("CHL") d/b/a America's Wholesale Lender ("AWL") is a privately owned corporation organized and existing pursuant to the rules and laws of New York, and a wholly owned subsidiary of non-party to this complaint BOA-Co, whose primary business is originating residential mortgage loans using monies supplied through third-party warehouse lenders for the sole purpose of securitizing its mortgage originations to the secondary market pursuant to purchase and servicing a portfolio of

residential mortgage loans.  Defendant may be served with process of this court upon Brian T. Moynihan as CEO of Defendant's parent company, or upon any officer or authorized agent at Defendant's principal place of business located at 100 N. Tryon St., Charlotte, NC, 28255.

4.      Upon information and belief, Defendant Ditech Mortgage, LLC f/k/a Green Tree Servicing, LLC ("Ditech / Green Tree") is a privately owned limited liability company organized and existing pursuant to the rules and laws of Delaware, and a wholly owned subsidiary of non-party to this complaint Ditech Holding Corporation.  Upon information and belief, the Defendant's primary business is residential mortgage loan servicing and customer support for performing, re-performing, and non-performing loans in the United States. The company also provides wholesale loan origination services.  Defendant may be served with process of this court upon Thomas Marano as CEO of Defendant's parent company, or upon any officer or authorized agent at Defendant's principal place of business located at 1100 Virginia Drive, Suite 100A, Fort Washington, PA 19034.

5.      Upon information and belief, Defendant The Bank of New York Mellon f/k/a The Bank of New York ("BONY") is a New York state chartered bank, a member of the Federal Reserve System and subject to regulation, supervision and examination by the Federal Reserve and the New York State Department of Financial Services.  Upon information and belief, BONY provides an array of financial services including, but not limited to, trustee services as complained of herein wherein BONY is the purported trustee for the Certificateholders of CWMBS, Inc., CHL Mortgage Pass-Through Trust 2005-30, Mortgage Pass-Through Certificates, Series 2005-30 ("CHL Mortgage Pass-Through Trust 2005-30"), the latter of which is an entity that was created to function as a Real Estate Mortgage Investment Conduit ("REMIC") pursuant to the Internal Revenue Code, and created pursuant to the laws of New York state.  Defendant may be served

with process of this court upon Charles W. Scharf as CEO, or upon any officer or authorized agent at Defendant's principal place of business located at  240 Greenwich St, New York, NY 10286.

6.      Upon information and belief, the Defendants and / or their affiliates who are non-parties to this complaint, are members of non-party MERSCORP Holdings, Inc. f/k/a MERSCORP Inc. ("MERSCORP"), giving Defendants direct access and use of MERSCORP's wholly-owned subsidiary, non-party Mortgage Electronic Registration Systems, Inc. ("MERS"), and the MERS® System, MERS® eRegistry, and MERS® Servicer ID which are all owned and operated by non-party MERSCORP.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331, as this matter involves federal claims arising under federal law, thereby invoking the Court's federal question jurisdiction.

8.      This Court has personal jurisdiction over Defendants, as Defendants have had the requisite minimum contacts with the State of New Jersey and Defendants have and continue to regularly conduct business in the State of New Jersey.

9.      Venue lies in the United States District Court for the District of New Jersey, as a substantial part of the property that is the subject of this action is located in the State of New Jersey.

10.      Further, venue lies in the United States District Court for the District of New Jersey, as a substantial part of the events or omissions upon which Plaintiffs' claims are based has occurred in the State of New Jersey.

## FACTS COMMON TO ALL COUNTS

11.      On or about October 15, 2004, three-hundred sixty-six days before the Holder's were signed 1st and 2nd mortgage loans in dispute on October 14, 2005 wherein the respective

security instruments created by MERSCORP member CHL declared that MERS was authorized

to take any and all actions that the purported lender(s) could have taken for themselves (i.e.

foreclosure), MERS as the Appellant in Mortgage Electronic Registration Systems, Inc., Appellant

v. Nebraska Department of Banking & Finance, Respondent (A-04-000786) admitted under

penalty of perjury that despite being designated the "mortgagee" acting solely as "nominee" within

a "mortgage" instrument similar to the security instrument in dispute in this matter:

> "… MERS is not the owner of the promissory note secured by the mortgage and has no rights to the payments made by the debtor on such promissory note… MERS is not the owner of the servicing rights relating to the mortgage loan and MERS does not service loans. The beneficial interest in the mortgage (or the person or entity whose interest is secured by the mortgage) runs to the owner and holder of the promissory note…. As more fully explained below, MERS does not make or acquire promissory notes or debt instruments of any nature and therefore cannot be said to be acquiring mortgage loans…. MERS has no interest in the notes secured by mortgages or the servicing rights related thereto." (at 11-12)

> "… The mortgage loan refers to the promissory note to which MERS does not acquire any interest…. MERS does not acquire any interest (legal or beneficial) in the loan instrument (i.e., the promissory note or other debt instrument)." (at 13)

> "MERS does not collect mortgage payments. MERS does not hold escrows for taxes and insurance. MERS does not provide any servicing functions on mortgage loans, whatsoever. Those rights are typically held by the servicer of the loan, who may or may not also be the holder of the note. The beneficial interest in the mortgage (or the person or entity whose interest is secured by the mortgage) runs to the owner and holder of the promissory note and/or servicing rights thereunder…. As MERS merely holds legal title to the security instrument as nominee for the lender, it lacks authority to do anything more than notify the lender or loan servicer of the consumer's complaint." (at 20)

> "…MERS does not directly or indirectly make, originate, service negotiate, acquire, sell, arrange for or offer to make, originate, service, negotiate, acquire, sell, arrange for mortgage loans. MERS does not receive compensation or gain in consideration for its performance of any of the mortgage banking activities described in the Act. MERS does not obtain legal or beneficial title to promissory notes or other debt instruments; therefore, under a "plain meaning" interpretation of the Act, it cannot be deemed to be acquiring mortgage loans…" (at 22).

12.     On October 14, 2005, the Plaintiffs became owners of the subject property by deed

recorded by the Office of the Clerk for Middlesex County, NJ ("Middlesex County Clerk") on

November 16, 2005 , and executing what the Holder's then believed was a traditional original

purchase mortgage loan that was presented and prepared by CHL, the latter of whom through its

agents required Mrs. Holder to sign two (2) paper promissory notes ("note") and the Plaintiffs both signed two "mortgage" instruments dated October 14, 2005, the latter of which was recorded on November 16, 2005, wherein:

    a.  the 1st "note" and "mortgage" instrument designated AWL as the lender and a "Corporation organized and existing under the laws of New York" that suffered a loss of $488,000.00 by loaning its (AWL's) money to the Plaintiffs as the purported "borrowers".;

    b.  the terms and conditions within the 1st "note" required Plaintiff to repay AWL and / or the "holder" of the "note" 360 installments of principal and interest payments starting December 1, 2005 at 5.875% interest for a total payment amount of $2,886.70, along with escrow payments for real property taxes and hazard insurance premiums.;

    c.  the maturity date for both the 1st "mortgage loan" is November 1, 2035.;

    d.  the 2nd "mortgage" instrument designated Countrywide Bank, N.A. as the lender that suffered a loss of $61,000.00 by loaning its money to the Plaintiffs as the purported "borrowers".; AND

    e.  the aforementioned "mortgage" instruments signed by the Plaintiffs:

        i.  displays on page 1 of 10 of the 1st "mortgage" the letters "MIN" followed by eighteen digits ("1000157-0001312930-5"), and page 1 of 5 of the 2nd "mortgage" the letters "MIN" followed by eighteen digits ("1001337-0000993576-1").;

        ii.  displays on page 1 of the 1st "mortgage" instrument that MERS located at P.O. Box 2026, Flint, Michigan 48501 was the purported "nominee" for

AWL as the purported lender, and the lender's successors and assigns, and pages 2-3 declares that MERS as the purported "nominee" for AWL, the latter's successors and assigns, was the "mortgagee" under the security instrument authorized to take any action including foreclosure as the alleged "nominee" for the lender, lender's successors and assigns.; AND

iii. displays on page 1 of the 2nd "mortgage" instrument that MERS located at P.O. Box 2026, Flint, Michigan 48501 was the purported "nominee" for CHL as the purported lender, and the lender's successors and assigns, and pages 1-2 of 5 of the 2nd "mortgage" instrument declares that MERS as the purported "nominee" for CHL, the latter's successors and assigns, was the "mortgagee" authorized to take any action including foreclosure as the alleged "nominee" for the lender, lender's successors and assigns.

The aforementioned note and mortgage instruments in dispute descried above within ¶12, are herein collectively referred to as the "1st mortgage loan" and "2nd mortgage loan".

13.     Hence, the Plaintiffs herein aver that as of the October 14, 2005 date assigned to the 1st and 2nd mortgage loans in dispute, the Holder's were unaware and recently discovered that:

a. AWL, the party declared within the 1st mortgage loan to be a lender and a "Corporation organized and existing under the laws of New York" that suffered a loss of $488,000.00, was not an official entity registered in the State of New York or with the Treasury for the State of New Jersey, to conduct business in the State, and at all relevant times, was a dba used by CHL.;

b. CHL, using the name of its dba (AWL) for the 1st mortgage loan and using Countrywide Bank as the purported lender for the 2nd mortgage loan, relied on

table funded commitments supplied by third-party warehouse lenders[2] in order to originate mortgage loans in "name only", including the "mortgage loan" in dispute.;

c. CHL, using the name of its dba (AWL) for the 1st mortgage loan and using Countrywide Bank as the purported lender for the 2nd mortgage loan, omitted and concealed from the Holder's the actual source for the $488,000.00 and $61,000.00 in dispute and misrepresented a dba (AWL) and Countrywide Bank as the "lenders" within the 1st and 2nd paper note and mortgage instruments, respectively.;

d. CHL, using the name of its dba (AWL) for the 1st mortgage loan and using Countrywide Bank as the purported lender for the 2nd mortgage loan, converted the Holder's from a "mortgagor" under Article 3 of New Jersey Uniform Commercial Code ("NJ UCC") into a securities issuer of a securities transaction pursuant to Article 8, and any sale of the fraud in factum obligations in dispute and enforcement by a purchaser were governed by article 9 of NJ UCC[3] in order

---

[2] Citing "*Real Estate Finance – Theory and Practice, Third Edition*" by Terence M. Clauretie of the University of Nevada, Las Vegas and G. Stacy Sirmans of Florida State University defining mortgage origination by mortgage bankers using "Warehouse Lending" as: "Mortgage Bankers have two principal sources of funds… A second source of funds for mortgage bankers is short-term loans from commercial banks; these are called warehouse loans. A mortgage banker will ask for a line-of-credit for, say, $2 million. The mortgage banker will agree to a compensating balance, usually 20 percent of the maximum line-of-credit. As mortgage loans are made from this line-of-credit, the mortgage banker will pledge those loans as collateral for the line-of-credit. That is, when the mortgage banker originates a mortgage for $100,000, he will simultaneously "take down" $100,000 of the $2 million line-of-credit and pledge the mortgage note for collateral. After the mortgage banker has originated $2 million in mortgages, he will sell them to an investor. The proceeds of the sale will pay off the line-of-credit at the commercial bank…" (*Id*. at Page 278).

[3] Under the UCC, a note sale or transfer is effective and enforceable upon meeting three criteria: (i) the buyer giving value, (ii) to a seller with rights in the note and (iii) execution of a security or purchase agreement that either describes the note or is accompanied by possession of the note. (internal footnote

Continued on following page

for CHL, its non-party affiliates, and / or successors in assigns to create and profit from Mortgage Backed Securities ("MBS"), Collateralized Debt Obligations ("CDO"), derivative contracts,[4] and the rehypothecation[5] of the Plaintiffs' collateral.;

e. CHL, using its MERSCORP membership, illegally created two transferable records a/k/a eNotes ("electronic notes")[6] that were assigned eighteen (18) digit "Mortgage Identification Numbers" ("MIN")[7] (1000157-0001312930-5 and

---

omitted). Once the note is sold or transferred such that the conveyance is enforceable or "attaches" as described above, there is a corresponding automatic transfer of the seller's interest in the mortgage to the buyer. Section 9.203(g) of the UCC states "The attachment of a security interest [which includes the right of a buyer of the note] in a right to payment or performance secured by a security interest or other lien on personal or real property is also attachment of a security interest in the security interest, mortgage or other lien. See UCC §9.203. For a thorough review of the issues under the UCC discussing rights of the "owner" of a note, the party entitled to enforce the note, transfer of the note, and the impact of transfer on the underlying mortgage, see *Report of the Permanent Editorial Board for the Uniform Commercial Code Application of the Uniform Commercial Code to Selected Issues Relating to Mortgage Notes* (Nov. 14, 2011), Amer. Law Institute and National Conf. on Uniform State Laws.

[4] For a general description and discussion of the derivatives market, *see generally* S. Das, Swap & Derivative Financing - The Global Reference to Products, Pricing, Applications and Markets 3-36 (1993). See also "*Derivatives And Rehypothecation Failure It's 3:00 p.m., Do You Know Where Your Collateral Is*?." by Christian A. Johnson  Assistant Professor of Law, Loyola University Chicago School of Law. B.A.; MPrA, Utah; J.D., Columbia, 1990.

[5] Rehypothecation occurs when an intermediary holding securities on behalf of investors—often a broker–dealer acting as prime broker for its customers—grants a security interest in (or otherwise encumbers) those securities in order to obtain financing for itself. (Citing "*Distorting Legal Principles*" by Stanley A. Star Professor of Law & Business, Duke University School of Law; Founding/Co-Academic Director, Duke Global Capital Markets Center (July 15, 2010). See also "*Derivatives And Rehypothecation Failure It's 3:00 p.m., Do You Know Where Your Collateral Is*?." by Christian A. Johnson  Assistant Professor of Law, Loyola University Chicago School of Law. B.A.; MPrA, Utah; J.D., Columbia, 1990.

[6] See N.J.S.A. 12A:9-105.

[7] The Plaintiff respectfully request the Court to take Judicial Notice pursuant to Federal Rules of Evidence 201 of the MERSCORP – MERS publication titled "*eNotes Speed. Security. Efficiency. The future of mortgage lending.*" that was once retrievable at https://www.mersinc.org/join-mers-docman/1182-mers-eregistry-brochure/file (last checked August 15, 2018) for page five of six that states a "MIN" ("Mortgage Identification Number") is "the unique identification number for a registered eNote".

Continued on following page

1001337-0000993576-1) that were registered on the MERS® eRegistry[8] using both MIN's and Mrs. Holder's social security number, the latter of which was taken without the permission of the Plaintiff, and the MIN's affixed within the first pages of the 1st and 2nd "mortgage" instruments.; AND

f.  the Holder's never knew nor consented to CHL causing the aforementioned electronic notes to become part of the "mortgage loans" in dispute, and Mrs. Holder's electronic signatures that were affixed upon the electronic note instruments, are forgeries[9] because the Plaintiff ***never*** (emphasis added) electronically signed the electronic notes that were made part of the 1st and 2nd mortgage loans in dispute as required by law[10].;

Furthermore, despite MERS' designation within the aforementioned 1st mortgage instrument as the alleged "nominee" for a dba (AWL) as the alleged lender, and the latter's successors and assigns, and the 2nd mortgage instrument as the purported "nominee" for Countrywide Bank as the alleged lender, and the latter's successors and assigns, the Plaintiffs aver that at not time were they presented with a power of attorney before, on, or after October 14, 2005 as required under N.J.S.A. 46:2B-8.9 to prove the existence of the purported agency relationships set forth within the 1st and 2nd mortgage instruments in dispute, a power of attorney was not attached to either instrument

---

[8] The Plaintiff respectfully request the Court to take Judicial Notice pursuant to Federal Rules of Evidence 201 of the MERSCORP – MERS website for "***Frequently Asked Questions - What is the MERS® eRegistry?***", retrieved at https://mersinc.org/about/faq (last checked August 15, 2018).

[9] N.J.S.A. 2C:21-1 Forgery and Related Offenses; N.J.S.A. 2C:21-17. Impersonation; theft of identity; crime; N.J.S.A.2C:21-17.3 Trafficking in personal identifying information pertaining to another person; and N.J.S.A. 2C:21-16 Securing execution of documents by deception.

[10] Electronic Signatures in Global and National Commerce Act ("ESIGN") (See 15 U.S.C. § 7001 et seq.).

Continued on following page

upon their recording in the local land records on November 16, 2005 and remains unrecorded to present date. Additionally, upon knowledge and belief, the Plaintiffs aver that Defendant CHL, and the latter's successors and assigns as members of non-party MERSCORP, willfully destroyed[11] the original 1st and 2nd paper note instruments in dispute upon creating the aforementioned forged – stolen electronic notes that were, undoubtedly, made part of the 1st and 2nd "mortgage loans", and the same electronic notes were used by CHL in order to facilitate an illegal securitization scheme complained of herein, without CHL documenting the sales constituting broken succession of title (See N.J.S.A. 2C:20-1(l)).

14.    Thus, for the foregoing reasons set forth above within paragraphs ¶11-13 and re-stated herein as though fully incorporated by reference, the Plaintiffs aver that the 1st and 2nd "mortgage loans" in dispute are fraud *in factum*,[12] unconscionable, predatory (per se), and unenforceable under state, federal, and common law.

---

[11] See N.J.S.A. 12A:3-604. Discharge by cancellation or renunciation. See also See also the Comments of the Florida Bankers Association to the Supreme Court of Florida on In Re: Amendments To Rules Of Civil Procedure And Forms For Use With Rules Of Civil Procedure (Case No. 09-1460) stating in relevant part that: "It is a reality of commerce that virtually all paper documents related to a note and mortgage are converted to electronic files almost immediately after the loan is closed. Individual loans, as electronic data, are compiled into portfolios which are transferred to the secondary market, frequently as mortgage-backed securities. The records of ownership and payment are maintained by a servicing agent in an electronic database. The reason "many firms file lost note counts as a standard alternative pleading in the complaint" is because the physical document was deliberately eliminated to avoid confusion immediately upon its conversion to an electronic file. See State Street Bank and Trust Company v. Lord, 851 So. 2d 790 (Fla. 4th DCA 2003). Electronic storage is almost universally acknowledged as safer, more efficient and less expensive than maintaining the originals in hard copy, which bears the concomitant costs of physical indexing, archiving and maintaining security. It is a standard in the industry and becoming the benchmark of modern efficiency across the spectrum of commerce—including the court system." (Id. at Pages 3-4).

[12] Fraud *in factum* is consider a good defense even against a holder in due course, provided there has been no negligence on the part of the maker. See *Amsterdam v. De Paul*, 70 N.J. Super. 196 (1961) 175 A.2d 219, wherein the Court stated in part, that: "…A negotiable instrument which is the product of fraud in the factum, unaccompanied by negligence, as distinguished from an instrument which is the product of fraud *200 in the treaty, is void, and not merely voidable. As stated in 17 C.J.S. Contracts § 140, p. 495: "Where some trick is used to substitute another instrument for the one which it is intended to sign, as where a note is substituted for a receipt, and in like cases, the signature has no legal effect, * * *. Hence there is no agreement which can give rights to anyone, except where the signer is estopped by negligence or otherwise

Continued on following page

15.     On October 15, 2005, one day after the Holder's were fraudulently induced into executing the fraud in factum 1st and 2nd mortgage loans complained of herein wherein MERS is misrepresented to be the "mortgagee" under the respective security instruments with the purported authority to take any and all actions the alleged lender(s) could have taken on their own (i.e. foreclosure), the Nebraska Supreme Court in Mortgage Electronic Registration Systems, Inc. v. Nebraska Department of Banking & Finance, 704 N.W.2d 784, 788 (Neb. 2005) issued an order and opinion in favor of MERS upon reversing the Nebraska Court of Appeals by declaring that, despite being designated the "mortgagee" acting solely as "nominee" within "mortgage" instruments similar to the document in dispute in this matter, MERS does not acquire mortgage loans, MERS takes no interest in any "mortgage loans", and MERS is contractually prohibited from taking any action on "mortgage loans" (i.e. "foreclosure"):

> "MERS argues that it does not acquire mortgage loans and is therefore not a mortgage banker under § 45-702(6) because it only holds legal title to members' mortgages in a nominee capacity and is contractually prohibited from exercising any rights with respect to the mortgages (i.e., foreclosure) without the authorization of the members.   Further, MERS argues that it does not own the promissory notes secured by the mortgages and has no right to payments made on the notes… But, simply stated, MERS has no independent right to collect on any debt because MERS itself has not extended credit, and none of the mortgage debtors owe MERS any money.   Based on the foregoing, we conclude that MERS does not acquire mortgage loans, as defined in § 45-702(8), and therefore, MERS is not subject to the requirements of the Act."

16.     Further, on November 11, 2005, the Plaintiffs were unaware and recently discovered, that Defendants CHL and BONY, and their non-party affiliates including CWMBS, Inc. ("CWMBS"), submitted a 424B5 Prospectus Supplement with the United States Securities

---

to set up the truth as against bona fide third persons * * *."'".   See also N.J.S.A. § 12A:3-305. Defenses and claims in recoupment, that states in part, that: "(a) Except as otherwise provided in this section, the right to enforce the obligation of a party to pay an instrument is subject to the following: (1) a defense of the obligor based on (i) infancy of the obligor to the extent it is a defense to a simple contract, (ii) duress, lack of legal capacity, or illegality of the transaction which, under other law, nullifies the obligation of the obligor, (iii) fraud that induced the obligor to sign the instrument with neither knowledge nor reasonable opportunity to learn of its character or its essential terms,…".

Continued on following page

14

and Exchange Commission ("SEC")[13] detailing the alleged creation of CHL Mortgage Pass-Through Trust 2005-30 as the purported "Issuer" of certificates with an approximate value of $514,555,415.00 that was deemed represent the purchase through purported true sales of 890 qualified (i.e. not in default) "mortgage loans" from: (1) the mortgage loan originators to CHL as the designated "Seller"; (2) CHL as the "Seller" to CWMBS, an affiliate company of CHL, as the designated "Depositor"; and (3) CWMBS as the "Depositor" to the BONY as Trustee for the Issuing Entity and on behalf of the certificate holders.  Hence, according to the aforementioned 424B5 Prospectus Supplement, the Issuing Entity was created to function as a tax qualified Real Estate Mortgage Investment Conduit ("REMIC") pursuant to applicable Internal Revenue Code (See 26 U.S.C. § 860D, et seq.) requiring a true sale of only qualified "mortgage loans" to the Issuing Entity by the November 29, 2005 "Closing Date".

17.	Unaware of the foregoing issues set forth within ¶11-16 pertaining to the illegality and falsities underlying the 1st and 2nd "mortgage loans" in dispute, and the 424B5 Supplement Prospectus that was created and filed with the SEC by Defendant CHL and the latter's non-party affiliates setting forth the true sale requirements of 890 "mortgage loans" in order to create the "Issuing Entity" known as CHL Mortgage Pass-Through Trust 2005-30, the Holder's acted in good faith upon paying the monthly installment of principal and interest, along with escrow items, that were declared due and owing to CHL and its affiliate company CHLS as the "mortgage servicers" demanding monies towards the fraud in factum transactions starting in or around December 1, 2005, while at all relevant times:

---

13	See  https://www.sec.gov/Archives/edgar/data/906410/000095012905011398/v14716e424b5.txt  (last checked August 15, 2018).

   a. the records maintained by the Middlesex County Clerk reflected no instruments asserting a transfer and assignment of the 1st and 2nd "mortgage loans" in dispute, and MERS as the purported "nominee" for a dba (AWL) and Countrywide Bank remained the alleged "mortgagee" of record for the 1st and 2nd "mortgage" instruments, respectively.; AND

   b. the Plaintiffs had yet to receive any communication from *any* (emphasis added) party asserting to be the new creditor a/k/a owner with a legal right to demand and receive payment towards the 1st and 2nd "mortgage loans" in dispute.

18.   On January 12, 2006, the Plaintiffs were unaware and recently discovered, that Defendants CHL and BONY, and their non-party affiliates including CWMBS, filed a Pooling and Servicing Agreement ("PSA") with the SEC[14] dated November 1, 2005, wherein:

   a. Article I – Definitions, sets forth:

      i. November 29, 2005 as the "Closing Date" for the Issuing Entity to purchase and take possession of only qualified "mortgage loans" from CWMBS as the "Depositor".;

      ii. CHL ("Countrywide Home Loans, Inc.") as: "…a New York corporation, and its successors and assigns, in its capacity as the seller of the Countrywide Mortgage Loans to the Depositor.".;

      iii. CWMBS as the "Depositor".;

      iv. the "Mortgage Loan Schedule" as: "The list of Mortgage Loans (as from time to time amended by the Master Servicer to reflect the addition of

---

14 See https://www.sec.gov/Archives/edgar/data/1345515/000090514806000279/efc6-0203_exhibit991.txt (last checked August 15, 2018).

16

Substitute Mortgage Loans pursuant to the provisions of this Agreement and the deletion of Deleted Mortgage Loans pursuant to the provisions of this Agreement) transferred to the Trustee as part of the Trust Fund and from time to time subject to this Agreement, attached hereto as Schedule I,…".;

v. Ownership Interest: "As to any Residual Certificate, any ownership interest in such Certificate including any interest in such Certificate as the Holder thereof and any other interest therein, whether direct or indirect, legal or beneficial.".;

vi. "REMIC" as "A "real estate mortgage investment conduit" within the meaning of section 860D of the Code.".;

vii. "REMIC Provisions" as: "Provisions of the federal income tax law relating to real estate mortgage investment conduits, which appear at sections 860A through 860G of Subchapter M of Chapter 1 of the Code, and related provisions, and regulations promulgated thereunder, as the foregoing may be in effect from time to time as well as provisions of applicable state laws.".;

viii. "Seller" as: "Countrywide, Park Granada, Park Monaco or Park Sienna, as applicable.".;

ix. "Startup Day" as: "The Closing Date.".;

x. "Substitute Mortgage Loan" as: "A Mortgage Loan substituted by a Seller for a Deleted Mortgage Loan which must, on the date of such substitution, as confirmed in a Request for Release, substantially in the form of Exhibit

17

M, (i) have a Stated Principal Balance, after deduction of the principal portion of the Scheduled Payment due in the month of substitution, not in excess of, and not more than 10% less than the Stated Principal Balance of the Deleted Mortgage Loan; (ii) be accruing interest at a rate no lower than and not more than 1% per annum higher than, that of the Deleted Mortgage Loan; (iii) have a Loan-to-Value Ratio no higher than that of the Deleted Mortgage Loan; (iv) have a remaining term to maturity no greater than (and not more than one year less than that of) the Deleted Mortgage Loan; (v) not be a Cooperative Loan unless the Deleted Mortgage Loan was a Cooperative Loan and (vi) comply with each representation and warranty set forth in Section 2.03 hereof."

xi.  "Trust Fund" as: "The corpus of the trust created hereunder consisting of (i) the Mortgage Loans and all interest and principal received on or with respect thereto after the Cut-off Date to the extent not applied in computing the Cut-off Date Principal Balance thereof; (ii) the Certificate Account, the Distribution Account and all amounts deposited therein pursuant to the applicable provisions of this Agreement; (iii) property that secured a Mortgage Loan and has been acquired by foreclosure, deed-in-lieu of foreclosure or otherwise; and (iv) all proceeds of the conversion, voluntary or involuntary, of any of the foregoing.".; AND

xii.  "Trustee" as: "The Bank of New York and its successors and, if a successor trustee is appointed hereunder, such successor.".

b.  Article II, SECTION 2.01. Conveyance of Mortgage Loans., states in relevant part that: "(a) Each Seller, concurrently with the execution and delivery hereof, hereby sells, transfers, assigns, sets over and otherwise conveys to the Depositor, without recourse, all its respective right, title and interest in and to the related Mortgage Loans, including all interest and principal received or receivable by such Seller on or with respect to the Mortgage Loans after the Cut-off Date and all interest and principal payments on the related Mortgage Loans received prior to the Cut-off Date in respect of installments of interest and principal due thereafter, but not including payments of principal and interest due and payable on such Mortgage Loans on or before the Cut-off Date. On or prior to the Closing Date, Countrywide shall deliver to the Depositor or, at the Depositor's direction, to the Trustee or other designee of the Depositor, the Mortgage File for each Mortgage Loan listed in the Mortgage Loan Schedule… (b) Immediately upon the conveyance of the Mortgage Loans referred to in clause (a), the Depositor sells, transfers, assigns, sets over and otherwise conveys to the Trustee for the benefit of the Certificateholders, without recourse, all the right, title and interest of the Depositor in and to the Trust Fund together with the Depositor's right to require each Seller to cure any breach of a representation or warranty made herein by such Seller or to repurchase or substitute for any affected Mortgage Loan in accordance herewith. (c) In connection with the transfer and assignment set forth in clause (b) above, the Depositor has delivered or caused to be delivered to the Trustee (or, in the case of the Delay Delivery Mortgage Loans, will deliver or cause to

be delivered to the Trustee within thirty (30) days following the Closing Date) for the benefit of the Certificateholders the following documents or instruments with respect to each Mortgage Loan so assigned:(i) (A) the original Mortgage Note endorsed by manual or facsimile signature in blank in the following form: "Pay to the order of _____ without recourse," with all intervening endorsements showing a complete chain of endorsement from the originator to the Person endorsing the Mortgage Note (each such endorsement being sufficient to transfer all right, title and interest of the party so endorsing, as noteholder or assignee thereof, in and to that Mortgage Note); or (B) with respect to any Lost Mortgage Note, a lost note affidavit from Countrywide stating that the original Mortgage Note was lost or destroyed, together with a copy of such Mortgage Note;...".  In addition, in connection with the assignment of any MERS Mortgage Loan, each Seller agrees that it will cause, at the Trustee's expense, the MERS® System to indicate that the Mortgage Loans sold by such Seller to the Depositor have been assigned by that Seller to the Trustee in accordance with this Agreement for the benefit of the Certificateholders by including (or deleting, in the case of Mortgage Loans which are repurchased in accordance with this Agreement) in such computer files the information required by the MERS(R) System to identify the series of the Certificates issued in connection with such Mortgage Loans. Each Seller further agrees that it will not, and will not permit the Master Servicer to, and the Master Servicer agrees that it will not, alter the information referenced in this paragraph with respect to any Mortgage Loan sold by such Seller to the Depositor during the term of

this Agreement unless and until such Mortgage Loan is repurchased in accordance with the terms of this Agreement.... As promptly as practicable subsequent to such transfer and, assignment, and in any event, within thirty (30) days thereafter, the Trustee shall (i) as the assignee thereof, affix the following language to each assignment of Mortgage: "CWMBS Series 2005-30, The Bank of New York, as trustee", (ii) cause such assignment to be in proper form for recording in the appropriate public office for real property records and (iii) cause to be delivered for recording in the appropriate public office for real property records the assignments of the Mortgages to the Trustee, except that, with respect to any assignments of Mortgage as to which the Trustee has not received the information required to prepare such assignment in recordable form, the Trustee's obligation to do so and to deliver the same for such recording shall be as soon as practicable after receipt of such information and in any event within thirty (30) days after receipt thereof and that the Trustee need not cause to be recorded any assignment which relates to a Mortgage Loan (a) the Mortgaged Property and Mortgage File relating to which are located in California or (b) in any other jurisdiction (including Puerto Rico) under the laws of which in the opinion of counsel the recordation of such assignment is not necessary to protect the Trustee's and the Certificateholders' interest in the related Mortgage Loan...;.

c. Article II, SECTION 2.02 – Acceptance by Trustee of the Mortgage Loans., stating in relevant part that: "(a) The Trustee acknowledges receipt of the documents identified in the Initial Certification in the form annexed hereto as

Exhibit F-1 and declares that it holds and will hold such documents and the other documents delivered to it constituting the Mortgage Files, and that it holds or will hold such other assets as are included in the Trust Fund, in trust for the exclusive use and benefit of all present and future Certificateholders. The Trustee acknowledges that it will maintain possession of the Mortgage Notes in the State of California, unless otherwise permitted by the Rating Agencies. The Trustee agrees to execute and deliver on the Closing Date to the Depositor, the Master Servicer and Countrywide (on its own behalf and on behalf of Park Granada, Park Monaco and Park Sienna) an Initial Certification in the form annexed hereto as Exhibit F-1. Based on its review and examination, and only as to the documents identified in such Initial Certification, the Trustee acknowledges that such documents appear regular on their face and relate to such Mortgage Loan. The Trustee shall be under no duty or obligation to inspect, review or examine said documents, instruments, certificates or other papers to determine that the same are genuine, enforceable or appropriate for the represented purpose or that they have actually been recorded in the real estate records or that they are other than what they purport to be on their face. On or about the thirtieth (30th) day after the Closing Date, the Trustee shall deliver to the Depositor, the Master Servicer and Countrywide (on its own behalf and on behalf of Park Granada, Park Monaco and Park Sienna) a Delay Delivery Certification with respect to the Mortgage Loans in the form annexed hereto as Exhibit G, with any applicable exceptions noted thereon. Not later than 90 days after the Closing Date, the Trustee shall deliver to the Depositor,

the Master Servicer and Countrywide (on its own behalf and on behalf of Park Granada, Park Monaco and Park Sienna) a Final Certification with respect to the Mortgage Loans in the form annexed hereto as Exhibit H, with any applicable exceptions noted thereon....(d) The Trustee shall retain possession and custody of each Mortgage File in accordance with and subject to the terms and conditions set forth herein. The Master Servicer shall promptly deliver to the Trustee, upon the execution or receipt thereof, the originals of such other documents or instruments constituting the Mortgage File as come into the possession of the Master Servicer from time to time.".;

d.  Article II, Section 2.07 – REMIC Matters, stating in relevant part that: "The Preliminary Statement sets forth the designations and "latest possible maturity date" for federal income tax purposes of all interests created hereby. The "Startup Day" for purposes of the REMIC Provisions shall be the Closing Date. The "tax matters person" with respect to each REMIC hereunder shall be the Trustee and the Trustee shall hold the Tax Matters Person Certificate. Each REMIC's fiscal year shall be the calendar year.".; AND

e.  Article X, Section 10.03 – Governing Law, stating in relevant par that: "THIS AGREEMENT SHALL BE CONSTRUED IN ACCORDANCE WITH AND GOVERNED BY THE SUBSTANTIVE LAWS OF THE STATE OF NEW YORK APPLICABLE TO AGREEMENTS MADE AND TO BE PERFORMED IN THE STATE OF NEW YORK AND THE OBLIGATIONS, RIGHTS AND REMEDIES OF THE PARTIES HERETO AND THE

23

CERTIFICATEHOLDERS SHALL BE DETERMINED IN ACCORDANCE WITH SUCH LAWS."

19.     Hence, throughout the duration of years 2006, 2007, 2008,[15] 2009, and 2010, the Plaintiffs remained unaware of the foregoing facts and issues set forth within ¶¶11-18, and therefore, continued acting in good faith upon paying the monthly installment of principal and interest, along with escrow items, that were declared due and owing to CHLS and later BAC and BANA[16] as the "mortgage servicers" demanding monies towards the 1st and 2nd "mortgage loans" in dispute, while at all relevant times:

   a.   the records maintained by the Middlesex County Clerk reflected no instruments asserting a transfer and assignment of the 1st and 2nd "mortgage loans" in dispute, and MERS as the purported "nominee" for a dba (AWL) and Countrywide Bank remained the alleged "mortgagee" of record for the 1st and 2nd "mortgage" instruments, respectively.; AND

   b.   the Plaintiffs had yet to receive any communication from *any* (emphasis added) party asserting to be the new creditor a/k/a owner with a legal right to demand and receive payment towards the 1st and 2nd "mortgage loans" in dispute, which as of May 2009, was a requirement pursuant to 15 U.S.C. § 1641(g).

20.     On April 13, 2011, while the Plaintiffs remained unaware of the foregoing issues set forth within ¶¶11-19, and continued acting in good faith upon paying the monthly installment

---

[15] Effective June 5, 2008, the Federal Reverse Bank Board of Governors approved BOA-Co's acquisition of Countrywide Financial Corporation ("CFC") and the latter's non-banking subsidiaries including, but not limited to, CHLS which merged with and into BAC.

[16] With the acquisition of CFC by BOA-Co in the year 2008, BAC, followed by BANA, begin demanding monies from the Plaintiffs and threatening foreclosure of the "mortgage loans" in dispute starting in the year 2011.

of principal and interest, along with escrow items, that were declared due and owing to BAC as the "mortgage servicer" demanding monies towards the "mortgage loans" in dispute, the Holder's were not aware and recently discovered that federal authorities issued a consent order in <u>In the Matter of: MERSCORP, Inc. and the Mortgage Electronic Registration Systems, Inc.</u> (OCC No.AA-EC-11-20, Board of Governors, Docket Nos. 11-051-B-SC-1, 11-051-B-SC-2, FDIC-11-194b, OTS No. 11-040, FHFA No. EAP-11-01) prohibiting MERSCORP, its subsidiary MERS, MERSCORP's members and non-members from further engagement in unfair, deceptive, and unlawful practices related to the foreclosure of residential "mortgage loans" including the creation of instruments asserting MERS through the latter's certifying officers transferred interest in "mortgage loans", and Article IX of the consent order required that, within ninety (90) days from the effective date of order, the MERSCORP Board to obtain an independent, external review of and recommendations regarding the eRegistry system of recording electronic notes.

21.     Also on April 13, 2011, the Plaintiffs were not aware and recently discovered, that the Comptroller of the Currency of the United States of America ("Comptroller") through his national bank examiners and other staff of the Office of the Comptroller of the Currency ("OCC") as part of an interagency horizontal review of major residential mortgage servicers and examination of the residential real estate mortgage foreclosure processes, entered a consent order against Defendant BANA in <u>In the Matter of Bank of America, N.A.</u> (Order No.: AA-EC-11-12) as servicer (not owner) for a portfolio of 13,500,000, upon identifying certain deficiencies and unsafe or unsound practices in residential mortgage servicing and in BANA's initiation and handling of foreclosure proceedings from 2008 through 2010, and prohibited BANA from further engagement in the following unfair, deceptive, and illegal practices including, but not limited to:

a. filing or causing to be filed in state and federal courts affidavits executed by its employees or employees of third-party service providers making various assertions, such as ownership of the mortgage note and mortgage, the amount of the principal and interest due, and the fees and expenses chargeable to the borrower, in which the affiant represented that the assertions in the affidavit were made based on personal knowledge or based on a review by the affiant of the relevant books and records, when, in many cases, they were not based on such personal knowledge or review of the relevant books and records;

b. filing or causing to be filed in state and federal courts, or in local land records offices, numerous affidavits or other mortgage-related documents that were not properly notarized, including those not signed or affirmed in the presence of a notary;

c. litigating foreclosure proceedings and initiating non-judicial foreclosure proceedings without always ensuring that either the promissory note or the mortgage document were properly endorsed or assigned and, if necessary, in the possession of the appropriate party at the appropriate time;

d. failing to devote sufficient financial, staffing and managerial resources to ensure proper administration of its foreclosure processes;

e. failing to devote to its foreclosure processes adequate oversight, internal controls, policies, and procedures, compliance risk management, internal audit, third party management, and training; AND

f. failing to sufficiently oversee outside counsel and other third-party providers handling foreclosure-related services.

26

22.    Heading into the summer of year 2011, the Holder's begin experiencing financial difficulties that affected their ability to pay the monthly installments demanded by BAC and / or BANA towards the 1st and 2nd "mortgage loans" in dispute, and the Plaintiffs did not make the payment declared due towards the 1st mortgage loan on September 1, 2011 and thereafter.

23.    In good faith, the Holder's begin seeking a modification from BAC / BANA in an effort to avoid a foreclosure of the subject property and to fulfill what the Plaintiffs then believed were legitimate obligations while the Holder's remained unaware of the aforementioned facts and issues set forth above in ¶¶11-21.

24.    The Plaintiffs aver that, at all relevant times, Defendant BAC / BANA were aware of the aforementioned falsities underlying the 1st and 2nd mortgage loans in dispute, and despite the Defendant's obligations to reframe from further engagement in the unfair, deceptive, and unlawful practices set forth within the April 13, 2011 cease and desist by Federal Authorities,[17] BAC / BANA willfully induced the Holder's into believing that Plaintiff's modification application was under review knowing the Defendants were without legal authority to modify the fraud in factum transactions, knowing that the Defendants had no intention provide modification assistance, and knowing that BAC / BANA were planning an illegal foreclosure action, the first of which did not occur until the year 2013.  Furthermore, for the duration of the year 2011, the records maintained by the Middlesex County Clerk reflected no instruments asserting a transfer and assignment of the 1st and 2nd "mortgage loans" in dispute, MERS as the purported "nominee" for a dba (AWL) and Countrywide Bank remained the alleged "mortgagee" of record for the 1st and 2nd "mortgage" instruments, respectively, and the Plaintiffs had yet to receive any communication

---

[17] See In the Matter of Bank of America, N.A. (Order No.: AA-EC-11-12).

from ***any*** (emphasis added) party asserting to be the new creditor a/k/a owner with a legal right to demand and receive payment towards the 1st and 2nd "mortgage loans" as required by 15 U.S.C. § 1641(g).

25.     On January 26, 2012, Defendant BANA created and caused to be recorded in the local land records, an instrument titled "ASSIGNMENT OF MORTGAGE", wherein:

a.   Aida Duenes of BANA with a purported address in Chapin, SC, is declared the preparer of the instrument.;

b.   BANA declared that MERS, in its individual capacity with a purported address in Danville, IL, was the "assignor" of the 1st "note" and "mortgage" instruments, and BONY as Trustee for CHL Mortgage Pass-Through Trust 2005-30 as the "assignee" of the same on January 3, 2012.;

c.   the name and purported signature of the name and purported signature of Jane Martorana is displayed as the alleged "Assistant Secretary" for MERS.; AND

d.   the name and purported acknowledgment of California notary public Lillian J. Ellison is displayed.

Hence, the Plaintiffs aver that upon BANA creating and causing the aforementioned instrument to be recorded in the local land records on January 26, 2012, the Defendant knew or should have known that the instrument was falsely made – forged – falsely notarized – void ab initio, and a willful violation of the cease and desist order entered against BANA and MERSCORP / MERS on April 13, 2011[18] because: (1) the designation of a dba (AWL) as the lender within the 1st "mortgage

---

[18] See In the Matter of Bank of America, N.A. (Order No.: AA-EC-11-12).; See also In the Matter of: MERSCORP, Inc. and the Mortgage Electronic Registration Systems, Inc. (OCC No.AA-EC-11-20, Board of Governors, Docket Nos. 11-051-B-SC-1, 11-051-B-SC-2, FDIC-11-194b, OTS No. 11-040, FHFA No. EAP-11-01).

loan" instantly rendered the obligation and security instrument fraud in factum, and unenforceable because a fictitious entity could not and was not the Plaintiff's lender on October 14, 2005.; (2) MERS never owned the 1ˢᵗ "mortgage loan" and was contractually prohibited from taking any action upon the transaction;[19] (3) MERS has never acted as a document custodian with physical possession of any mortgage loans;[20] (4) Jane Martorana was never employed by MERS as an "Assistant Secretary" because MERS has never had any (emphasis added) employees and, at all relevant times, (upon Plaintiffs' knowledge and belief) Jane Martorana was an employee of BAC and / or BANA; (5) California notary public Lillian J. Ellison was (upon Plaintiff's knowledge and belief) at all relevant times an employee of BAC and / or BANA, and she was never presented with sufficient identification from Jane Martorana as an "Assistant Secretary" of MERS because the latter has never had any such employees;[21] (6) BONY as Trustee for CHL Mortgage Pass-Through Trust 2005-30 was created to function as a REMIC pursuant to Internal Revenue Code (See 26 U.S.C. § 860D, et seq.) with a closing date to purchase 890 mortgage loans by November 29, 2005, and governed pursuant to the laws of New York State, rendering the purported transfer and assignment memorialized within BANA's instrument titled "ASSIGNMENT OF

---

[19] See the October 15, 2004 Appellate Brief filed by MERS in Mortgage Electronic Registration Systems, Inc., Appellant v. Nebraska Department of Banking & Finance, Respondent (A-04-000786) from the Nebraska Court of Appeals.  See also the October 15, 2005 order and opinion form the Nebraska Supreme Court in Mortgage Electronic Registration Systems, Inc. v. Nebraska Department of Banking & Finance, 704 N.W.2d 784, 788 (Neb. 2005).

[20] See the website owned and operated by MERSCORP / MERS for "**About Us - Frequently Asked Questions - Does MERS have the documents for loans registered on the MERS® System**?" retrieved at https://mersinc.org/about/faq (last checked August 15, 2018), stating that: "No. MERS, MERSCORP Holdings or the MERS® System **are not document custodians and do not hold promissory notes or mortgage documents** on behalf of lenders, servicers or investors.".

[21] See the deposition of MERSCORP executive William Hultman given under oath on April 7, 2010 in Bank of New York as trustee vs. Victor Ukpe, et al. (Docket No. F-10209-08) from the Superior Court of New Jersey, wherein he declared that MERS has never had any employees. (Id. at Page 69, Lines 13 - 18, 25, and Page 70, Lines 1-9).

MORTGAGE", a prohibited transaction as defined in Code Section 860F(a)(2) that is subject to tax on prohibited contributions as set forth in Section 860G(d) of the Internal Revenue Code, and void *ab initio* pursuant to New York Estates, Powers & Trusts - Part 2 - § 7-2.4 which provides: "If the trust is expressed in the instrument creating the estate of the trustee, every sale, conveyance or other act of the trustee in contravention of the trust, except as authorized by this article and by any other provision of law, is void.".

26.     On March 12, 2012, while the Plaintiff remained unaware of the foregoing issues set forth within ¶¶11-25, and continued acting in good faith to secure a modification from Defendants BAC / BANA as the "mortgage servicer" demanding monies towards the 1st and 2nd "mortgage loans" in dispute, the Department of Justice ("DOJ"), the Department of Housing and Urban Development ("HUD") and 49 State Attorney Generals, including the New Jersey State Attorney General ("NJ AG"), announced a $25 billion agreement with the nation's five largest mortgage servicers (not owners of mortgage loans) of which included Defendant BANA, in order to:

   a.   address mortgage loan servicing and foreclosure abuses.;

   b.   prevent foreclosure abuses such as forgery, false notarizations, and other improper documentation practices, and lost paperwork.;

   c.   require stricter oversight of foreclosure processing, including third-party vendors of which includes foreclosure attorneys.;

   d.   new requirements to undertake pre-filing reviews of certain documents filed in bankruptcy court.;

e.  create new servicing standards in order to make foreclosure a last resort by requiring servicers to evaluate homeowners for other loss mitigation options first.;

f.  restrict servicers from foreclosing while the homeowner is being considered for a loan modification.;

g.  require servicers to remediate any harm to borrowers that are identified in quarterly reviews overseen by the monitor and, in some instances, conduct full look-backs to identify any additional borrowers who may have been harmed.; AND

h.  require any servicer who violates the requirements of the consent judgment to pay penalties of up to $1 million per violation or up to $5 million for certain repeat violations.

27.  On March 14, 2012, while the Plaintiff remained unaware of the foregoing issues set forth within ¶¶11-26, and continued acting in good faith to secure a modification from Defendants BAC / BANA as the "mortgage servicer" demanding monies towards the 1st and 2nd "mortgage loans" in dispute, the United States of America and 49 State Attorney Generals (including the NJ AG) filed a civil complaint in the United States District Court for the District of Columbia (See United States of America, et.al. v. Bank of America N.A., et al., (Docket No. 1:12-cv-00361 RMC)) wherein the NJ AG appeared on behalf of the Holder's and similarly situated victims of Defendant BANA's unlawful practices pursuant to protection enforcement authority conferred on the NJ AG by state law and pursuant to *parens patriae* and common law authority, seeking injunctive relief, restitution for consumer, and civil penalties against BANA as a servicer (not owner) for a portfolio of residential mortgage loans for engaging in unfair, deceptive, and

illegal practices including, but not limited:

*"Unfair, Deceptive, and Unlawful Loan Modification and Loss Mitigation Processes"* including**:**

a.  failing to perform proper loan modification underwriting;

b.  failing to gather or losing loan modification application documentation and other paper work;

c.  failing to provide adequate staffing to implement programs;

d.  failing to adequately train staff responsible for loan modifications;

e.  failing to establish adequate processes for loan modifications;

f.  allowing borrowers to stay in trial modifications for excessive time periods;

g.  wrongfully denying modification applications;

h.  failing to respond to borrower inquiries;

i.  providing false or misleading information to consumers while referring loans to foreclosure during the loan modification application process;

j.  providing false or misleading information to consumers while initiating foreclosures where the borrower was in good faith actively pursuing a loss mitigation alternative offered by the Bank;

k.  providing false or misleading information to consumers while scheduling and conducting foreclosure sales during the loan

application process and during trial loan modification periods;

l.  misrepresenting to borrowers that loss mitigation programs would provide relief from the initiation of foreclosure or further foreclosure efforts;

m.  failing to provide accurate and timely information to borrowers who are in need of, and eligible for, loss mitigation services, including loan modifications;

n.  falsely advising borrowers that they must be at least 60 days delinquent in loan payments to qualify for a loan modification;

o.  miscalculating borrowers' eligibility for loan modification programs and improperly denying loan modification relief to eligible borrowers;

p.  misleading borrowers by representing that loan modification applications will be handled promptly when Banks regularly fail to act on loan modifications in a timely manner;

q.  failing to properly process borrowers' applications for loan modifications, including failing to account for documents submitted by borrowers and failing to respond to borrowers' reasonable requests for information and assistance;

r.  failing to assign adequate staff resources with sufficient training to handle the demand from distressed borrowers; and

s.  misleading borrowers by providing false or deceptive reasons for denial of loan modifications.

"***Wrongful Conduct Related to Foreclosures***" practices including:

a.  failing to properly identify the foreclosing party.;

b.  charging improper fees related to foreclosures.;

c.  preparing, executing, notarizing or presenting false and misleading documents, filing false and misleading documents with courts and government agencies, or otherwise using false or misleading documents as part of the foreclosure process (including, but not limited to, affidavits, declarations, certifications, substitutions of trustees, and assignments).;

d.  preparing, executing, or filing affidavits in foreclosure proceedings without personal knowledge of the assertions in the affidavits and without review of any information or documentation to verify the assertions in such affidavits.  This practice of repeated false attestation of information in affidavits is popularly known as "robosigning."  Where third parties engaged in robosigning on behalf of the Banks, they did so with the knowledge and approval of the Banks.;

e.  executing and filing affidavits in foreclosure proceedings that were not properly notarized in accordance with applicable state law.; AND

f.  misrepresenting the identity, office, or legal status of the affiant executing foreclosure-related documents.

28.     On April 4, 2012, March 14, 2012, while the Plaintiffs remained unaware of the foregoing issues set forth within ¶¶11-27, and continued acting in good faith to secure a modification from Defendants BAC / BANA as the "mortgage servicer" demanding monies towards the 1st and 2nd "mortgage loans" in dispute, BANA through its parent company and non-party to this action BAC-Co entered into a settlement agreement with the United States of America

and 49 State Attorney Generals (including the NJ AG) that was coined the "*National Mortgage Settlement*" that prohibited the Defendant herein BANA as the servicer (not the owner) of a portfolio of residential mortgage loans from further engagement in the aforementioned unfair, deceptive, and illegal practices cited in the March 14, 2012 civil complaint in <u>United States of America, et.al. v. Bank of America N.A., et.al</u>, (Docket No. 1:12-cv-00361 RMC) that took place as of 11:59 p.m., Eastern Standard Time, on February 8, 2012, to avoid penalties of up to $1 million per violation or up to $5 million for certain repeat violations under the following laws set forth within the "Terms and Conditions" (<u>Id</u>. at Page 233):

    a.  the Financial Institutions Reform, Recovery, and Enforcement Act ("FIRREA").;

    b.  the False Claims Act.;

    c.  the Racketeer Influenced and Corrupt Organizations Act.;

    d.  the Real Estate Settlement Procedures Act.;

    e.  the Fair Credit Reporting Act.;

    f.  the Fair Debt Collection Practices Act.;

    g.  the Truth in Lending Act.;

    h.  the Interstate Land Sales Full Disclosure Act.;,

    i.  15 U.S.C. § 1691(d) ("Reason for Adverse Action") or § 1691(e) ("Appraisals").; AND

    j.  sections 502 through 509 (15 U.S.C. § 6802-6809) of the Gramm-Leach Bliley Act except for section 505 (15 U.S.C. § 6805) as it applies to section 501(b) (15 U.S.C. § 6801(b)).

29.     The Plaintiffs aver that, despite the obligations of Defendants BAC and BANA arising from the consent order entered on April 4, 2012 in <u>United States of America, et.al. v. Bank of America N.A., et.al,</u> (Docket No. 1:12-cv-00361 RMC), along with the obligations of BANA and MERSCORP / MERS arising from the cease and desist orders entered against each by Federal Authorities on April 13, 2011,[22]   BAC and / or BANA willfully continued throughout the year 2012 to engage on the unfair deceptive modification practices that were prohibited by the April 4, 2012 consent order entered in in <u>United States of America, et.al. v. Bank of America N.A., et.al,</u> (Docket No. 1:12-cv-00361 RMC) by giving the Holder's the false impression that modification relief was pending while, at all relevant times, the Defendants knew: (1) that BAC / BANA were without legal authority to modify the fraud in factum transactions complained of herein; (2) the Defendants had no intention provide modification assistance, and (3) that BAC / BANA were planning an illegal foreclosure action, the first of which did not occur until the year 2013. Furthermore, for the duration of the year 2012, the records maintained by the Middlesex County Clerk reflected no instruments asserting a transfer and assignment of the 2nd "mortgage loan" in dispute for MERS as the purported "nominee" for Countrywide Bank remained the alleged "mortgagee" of record, and the Plaintiffs never received any communication from *any* (emphasis added) party asserting to be the new creditor a/k/a owner with a legal right to demand and receive payment towards the 1st and 2nd "mortgage loans" as required by 15 U.S.C. § 1641(g).

---

[22] See <u>In the Matter of Bank of America, N.A.</u> (Order No.: AA-EC-11-12).; See also <u>In the Matter of: MERSCORP, Inc. and the Mortgage Electronic Registration Systems, Inc.</u> (OCC No.AA-EC-11-20, Board of Governors, Docket Nos. 11-051-B-SC-1, 11-051-B-SC-2, FDIC-11-194b, OTS No. 11-040, FHFA No. EAP-11-01).

30.     On October 23, 2013, BANA through the law firm of Frank J. Martone, P.C. located in Bloomfield, NJ, commenced the first of two illegal foreclosure debt collection actions by complaint filed in the Superior Court of New Jersey, wherein:

a.  BANA misrepresented a dba (AWL) as the lender that suffered a loss of $488,000.00 on October 14, 2005 as the lender for the fraud in factum 1st "mortgage loan" in dispute.;

b.  BANA misrepresented that the Holder's gave the 1st "mortgage" instrument to MERS as the purported "nominee" for a dba (AWL) when, at all relevant times,:

   i.  MERS never took any interest in the fraud in factum 1st "mortgage loan" and was contractually prohibited from taking any action on the same (i.e. foreclosure).;

   ii.  MERS could not serve as a "nominee" for a dba.; AND

   iii.  the Plaintiffs were never presented with a power of attorney to validate MERS' purported agency relationship recited within the fraud in factum 1st "mortgage loan" and BANA' foreclosure complaint, and the same remains unrecorded to present date.

c.  BANA misrepresented the BONY as Trustee for CHL Mortgage Pass-Through Trust 2005-30 as the owner and holder of the fraud in factum 1st "mortgage loan" upon reciting the aforementioned falsely made – forged – falsely acknowledged – void ab initio instrument titled "ASSIGNMENT OF MORTGAGE" that was created and recorded in the local land records by BANA on January 6, 2012.;

d.   BANA omitted and concealed the identities of the certificate holders for CHL Mortgage Pass-Through Trust 2005-30 who are the only parties capable of asserting a right to any "mortgage loans" declared to be the assets of the trust.;

e.   BANA omitted and concealed the existence and location of the 1st forged – stolen electronic note that was illegally made part of the fraud in factum 1st "mortgage loan".; AND

f.   BANA omitted and concealed that the original 1st paper note was deliberately destroyed by CHL and / or the latter's successors and assigns upon the creation of the aforementioned forged – stolen 1st electronic note that was made part of the fraud in factum 1st "mortgage loan".

Similarly, on March 20, 2014, BANA through the law firm of Frank J. Martone, P.C. located in Bloomfield, NJ, commenced the last of two illegal foreclosure debt collection actions by complaint filed in the Superior Court of New Jersey upon voluntarily dismissing the first complaint in Docket No.: F-038616-13,[23] and consisting of the same misrepresentations and omissions with the exception of the false allegation set forth in the latter of the two actions wherein BANA falsely set forth within the First Count, paragraph 2(c) of the second complaint details for a purported loan modification agreement made by BAC and Mrs. Holder dated February 20, 2011, changing the unpaid principal balance to $525,302.37 as of April 1, 2011, the interest rate to 5.875% from March 1, 2011, the monthly principal and interest payment to $3,364.45 starting April 1, 2011 with the total amount due and payable on November 1, 2035.   The Plaintiffs aver that Mrs. Holder never

---

[23] On or about January 7, 2014, Defendant BANA caused law firm of Frank J. Martone, P.C. to voluntarily dismiss the foreclosure action in Docket No.: F-38616-13 for reasons unbeknownst to the Plaintiffs.

signed nor received a modification from BAC and / or BANA on February 20, 2011, and the alleged agreement has never been recorded by the Defendants.

31.     Furthermore, upon commencing the first and second foreclosure debt collection actions in Docket No.'s: F-038616-13 and F-010402-14, BANA designated MERS and Countrywide Bank as defendants in both actions for the fraud in factum 2nd "mortgage loan" wherein MERS remained the "mortgagee" of record for the security instrument recorded in the local land records on November 16, 2005.  On December 4, 2013 in the first illegal foreclosure action and on May 27, 2014 in the second, BANA submitted a non-contesting answer in response to the foreclosure debt collection complaints filed by the Defendant in Docket No.'s: F-038616-13 and F-010402-14, and deceptively declared in both instances that:

    a.  BANA does not dispute the priority or validity of fraud in factum 1st mortgage wherein a dba (AWL) is misrepresented as the lender, MERS is misrepresented to be the "nominee" for a dba (AWL) without any evidence of a power of attorney, and MERS is misrepresented to be the "mortgagee" under the 1st security instrument with the purported authority to take any and all actions including foreclosure when, at all relevant times, MERS had no interest in the fraud in factum 1st mortgage loan, MERS was contractually prohibited from taking any action, and MERS was never a document custodian with physical possession of the 1st mortgage loan.

    b.  BANA does not have sufficient knowledge or information to admit or deny the remaining allegations set forth within each false foreclosure debt collection complaint when, at all relevant times, BANA was the party responsible for

bringing both complaints by deceptively using the name of BONY as Trustee for CHL Mortgage Pass-Through Trust 2005-30 as the Plaintiff.;

c. BANA was entitled to relief towards the 2nd mortgage wherein Countrywide Bank is misrepresented as the lender, MERS is misrepresented to be the "nominee" for Countrywide Bank without any evidence of a power of attorney, MERS is misrepresented to be the "mortgagee" under the 2nd security instrument with the purported authority to take any and all actions including foreclosure when, at all relevant times, MERS had no interest in the fraud in factum 1st mortgage loan, MERS was contractually prohibited from taking any action, and MERS was never a document custodian with physical possession of the 2nd mortgage loan, and the records maintained by the Middlesex County Clerk were void of any instruments asserting a transfer of the fraud in factum 2nd "mortgage loan" for MERS remained the purported "mortgagee" of record.

Thus, the Plaintiffs aver that BANA as a member of MERSCORP knew, should have known, and / or willfully disregarded upon commencing the aforementioned false foreclosure debt collection actions in the State Court on October 23, 2013 and March 20, 2014, the Defendant's obligations to reframe from further engagement in unfair, deceptive, and illegal practices upon entering into a consent judgment on April 4, 2012 in United States of America, et.al. v. Bank of America N.A., et al., (Docket No. 1:12-cv-00361 RMC), along with the cease and desist orders issued against BANA and MERSCORP / MERS on April 13, 2011.[24]  Further, the Plaintiffs aver that, at all

---

[24] See In the Matter of Bank of America, N.A. (Order No.: AA-EC-11-12).; See also In the Matter of: MERSCORP, Inc. and the Mortgage Electronic Registration Systems, Inc. (OCC No.AA-EC-11-20, Board of Governors, Docket Nos. 11-051-B-SC-1, 11-051-B-SC-2, FDIC-11-194b, OTS No. 11-040, FHFA No. EAP-11-01).

relevant times, upon commencing and prosecuting the aforementioned illegal foreclosure actions in the State Court, BANA knew, should have known, and willfully disregarded that all claims pertaining to MERS that were raised in Docket No.'s: F-038616-13 and F-010402-14, were barred by: (1) the doctrine of judicial estoppel because of MERS' previous admissions made on October 15, 2004 in <u>Mortgage Electronic Registration Systems, Inc., Appellant v. Nebraska Department of Banking & Finance, Respondent</u> (A-04-000786) before the Nebraska Court of Appeals; (2) the doctrine of judicial estoppel because of the February 11, 2011 *Certification of Mortgage Electronic Registration Systems, Inc. In Response to Administrative Order 01-2010* submitted to the Superior Court of New Jersey in Docket No.: F-238-11 wherein MERS declared under penalty of perjury within ¶9, that: "MERS is not a mortgage servicer, nor does MERS own beneficial interests in promissory notes."; AND (3) collateral estoppel upon the June 29, 2010 order and opinion in <u>Bank of New York v. Raftogianis</u>, 418 N.J. Super. 323, wherein the Court denied summary judgment and dismissed a foreclosure complaint commenced by a MERSCORP member upon providing an analysis of MERS' purported involvement with a "mortgage loan" and role as a purported "nominee" for a lender designated within a "note", similar to the instant matter, by stating in part, that: "… MERS, as nominee, does not have any real interest in the underlying debt, or the mortgage which secured that debt" (Id. at 26), and "…It was entirely appropriate to argue that the February 2009 assignment from MERS, as nominee… was ineffective.   From the court's perspective, that assignment was, at best, a distraction." (Id. at 28).

32.     On October 28, 2015, the last of two foreclosure actions in Docket No.: F-010402-14 was voluntarily dismissed for reasons unknown to the Plaintiffs.  Furthermore, the Plaintiffs aver that between BANA commencing and dismissing the last of two illegal foreclosure actions, the specific date of which has yet to be discovered by the Holder's, BANA sold and / or transferred

servicing of the 1st and 2nd "mortgage loans" to Green Tree / Ditech, the latter of whom is obligated from further engagement in illegal debt collection practices, unfair – deceptive modification practices, and misrepresentations of account status to consumers and credit reporting agencies as a result the stipulated order for permanent injunction and monetary judgment entered on April 23, 2015 in Federal Trade Commission and Consumer Financial Protection Bureau, Plaintiffs v. Green Tree Servicing LLC (Case No. 0:15-cv-02064) form the United States District Court for the District of Minnesota.

33.    Hence, the Plaintiffs aver that, despite the aforementioned consent orders entered against BANA on April 4, 2012,[25] the cease and desist orders entered against BANA and MERSCORP / MERS on April 13, 2011,[26] and the permanent injunction entered against Green Tree / Ditech on April 23, 2015,[27] the Defendant has willfully continued to present date engagement in unfair, deceptive, and illegal practices by:

  a.  demanding monies from the Plaintiffs towards the 1st and 2nd "mortgage loans" under the duress and threat of an illegal foreclosure knowing (or should know) that the transactions are fraud in factum for the matters of fact set forth above within ¶¶11-13 and re-stated herein as though fully incorporated by reference.;

  b.  demanding monies from the Plaintiffs towards the fraud in factum 1st and 2nd "mortgage loans" under the duress and threat of an illegal foreclosure knowing

---

[25] See United States of America, et.al. v. Bank of America N.A., et al., (Docket No. 1:12-cv-00361 RMC).

[26] See In the Matter of Bank of America, N.A. (Order No.: AA-EC-11-12).; See also In the Matter of: MERSCORP, Inc. and the Mortgage Electronic Registration Systems, Inc. (OCC No.AA-EC-11-20, Board of Governors, Docket Nos. 11-051-B-SC-1, 11-051-B-SC-2, FDIC-11-194b, OTS No. 11-040, FHFA No. EAP-11-01).

[27] See Federal Trade Commission and Consumer Financial Protection Bureau, Plaintiffs v. Green Tree Servicing LLC (Case No. 0:15-cv-02064) form the United States District Court for the District of Minnesota.

(or should know) that Green Tree / Ditech is without legal authority and / or the documents being used by the Defendant are falsely made – forged – falsely notarized – and void ab initio for the matters of fact set forth above within ¶¶11-25 and re-stated herein as though fully incorporated by reference.; AND

c.  refusing to provide the Holder's with modification relief knowing (or should know) that the 1st and 2nd "mortgage loans" in dispute are fraud in factum for the reasons set forth above within ¶¶11-13 and re-stated herein as though fully incorporated by reference, and knowing (or should know) that Green Tree / Ditech is without legal authority and / or the documents being used by the Defendant are falsely made – forged – falsely notarized – and void ab initio for the matters of fact set forth above within ¶¶11-25 and re-stated herein as though fully incorporated by reference.

34.  The Plaintiff further avers that, at all relevant times, the "books and records" asserted to by the Defendants before, during, and after commencement and prosecution of the unlawful foreclosure debt collection actions in Docket No.'s: F-38616-13 and F-010402-14, were (and remain) self-serving and falsely made, and upon Plaintiff's information and belief, were supplied to the Defendants by an undisclosed third-party technology vendor, wherein the Defendants have and continue to willfully misrepresent the legal character, ownership and possession, and the amount due and owing for the fraud in factum obligations in dispute while, simultaneously, omitting and concealing that:

a.  the actual source of the original principal balances of $488,000.00 and $61,000.00 by misrepresenting a dba (AWL) and Countrywide Bank,

respectively, as the lenders who suffered actual losses knowing otherwise to be true.;

b.  CHL and / or its successors and assigns deliberately destroyed the 1st and 2nd paper notes upon the conversion and pledging of the fraud in factum obligations into a pool of securities by way of the two aforementioned forged – stolen electronic notes that were made part of the transactions in dispute and their locations and existence are being concealed by the Defendants through the MERS® Systems and / or MERS® eRegistry for transferable records.;

c.  BONY, at all relevant times, was acting in the capacity of a "trustee" for certificate holders for the securities issued through CHL Mortgage Pass-Through Trust 2005-30, the Defendant never took ownership nor beneficial interest of the 1st "mortgage loan" in dispute, and BANA, Ditech / Green Tree, and BONY have concealed and omitted the identity of the investors in possession of the securities issued from CHL Mortgage Pass-Through Trust 2005-30 for which, upon Plaintiff's knowledge and belief, the fraud in factum 1st "mortgage loan" obligation was pledged using the 1st forged – stolen electronic note registered by the Defendants through the MERS® Systems and / or MERS® eRegistry.;

d.  BANA and or Ditech / Green Tree, at all relevant times, were acting in the capacity of "mortgage servicers" (not the owners) for the 2nd "mortgage loan" in dispute, at the behest for investors who identities were and remain concealed by the Defendant, and those undisclosed investors are in possession of securities for which, upon Plaintiff's knowledge and belief, the fraud in factum 2nd

"mortgage loan" was pledged to a trust entity that is being omitted and concealed by the Defendants, through the 2nd aforementioned forged – stolen electronic note that was made part of the transaction in dispute and currently registered in the MERS® Systems and / or MERS® eRegistry.;

e.   BANA and Ditech / Green Tree have been unjustly enriched upon padding usurious fees (i.e. inspection fees, late fees, insurance premiums, hazard insurance, and other escrow related items) towards the amount declared due and owing for the fraud in factum 1st and 2nd "mortgage loans" in dispute pursuit of (and realized) increased profits[28] and other compensation stemming from the unlawful pledging of Plaintiff's collateral through the aforementioned fraud if factum – forged – stolen electronic note that was made part of the transaction in dispute.; AND

f.   the balance declared (falsely) due and owing to the Defendants for the fraud in factum 1st and 2nd "mortgage loan" in dispute, were offset and / or cancelled upon proceeds received and applied from undisclosed mortgage insurance policy(s), and / or credit default swaps, amounts of which are being omitted and concealed from the Defendant's purported "books and records" presented to the Plaintiffs and the State Court in Docket No.'s: F-038616-13 and F-010402-14.

---

[28] Citing "Real Estate Finance – Theory and Practice, Third Edition" by Terence M. Clauretie of the University of Nevada, Las Vegas and G. Stacy Sirmans of Florida State University, wherein mortgage servicing is described as one (1) of mortgage bankers' four (4) sources of revenue by stating in relevant part that: "Revenues for mortgage bankers come from four main sources.... They also charge a servicing fee, from 0.25 to 0.5 percent of the outstanding balance annually.... Origination and servicing fees represent the largest portion of mortgage bankers' revenues....   Servicing rights are a sort of mortgage-derivative security in their own right, and their value depends upon a host of assumptions regarding future interest rates and prepayments.   Most rights sell for between 1.5 percent and 2.25 percent of the amount to be serviced." Id. at Page 278.

35.     Last, and certainly not least, the records maintained by the Middlesex County Clerk to present date are void of any instruments asserting a transfer and assignment of the fraud in factum 2nd "mortgage loan" in dispute for MERS as the purported "nominee" for Countrywide Bank remains misrepresented as the purported "mortgagee" of record, and Holder's have ***never*** (emphasis added) received a "Notice of Sale / Transfer of Ownership" communication from ***any*** (emphasis added) party declaring itself to be the new creditor for the fraud in factum 1st and 2nd "mortgage loans" in dispute as required under 15 U.S.C. § 1641(g).

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**AGAINST - ALL DEFENDANTS;**
**VIOLATIONS OF NEW JERSEY CIVIL RICO (N.J.S.A. 2C:41-1 ET SEQ.), AND FEDERAL CIVIL RICO (18 USC §1962(C)); ACTIONABLE PURSUANT TO N.J.S.A. 2C:41-4C, AND 18 USC § 1964(C).**

36.     The Plaintiffs adopt the factual allegations set forth above in ¶¶1-35 as though fully set forth herein by reference.

37.     The Defendants designated in count one (1) constitute an "Enterprise" as defined in N.J.S.A. 2C:41-1 et seq. and 18 U.S.C. §1961(4).

38.     The enterprise and or enterprises have an existence apart from and beyond the racketeering activity complained of in this action.

39.     The Defendants designated in count one (1) violated the New Jersey and Federal Civil RICO statutes by conducting or participating, directly or indirectly, in the conduct of the affairs of an enterprise or enterprises, through a pattern of racketeering activity in violation of N.J.S.A. 2C:41-2(c) and -2(d), and 18 U.S.C. §1962(c), as set forth within ¶¶1-35 as though fully incorporated herein by reference.

40.     The acts by the Defendants designated in count one (1) constitutes a pattern of

racketeering activity that has continued and escalated beginning in or around October 14, 2005 and continues to present date.

41.     The acts by the defendants designated in count one (1) constitutes prohibited activities in violation of N.J.S.A. 2C:41-2 and 18 U.S.C. §1962(c) for the Defendants have received income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which they have participated as a principal within the meaning of N.J.S.A 2C:2-6 and 18 U.S.C. §1961(6) to use or invest, directly or indirectly, any part of the income, or the proceeds of the income, in acquisition of any interest in, or the establishment or operation of any enterprise which is engaged in or the activities of which affect trade or commerce.

42.     The aforementioned acts by Defendants BANA, CHL, Ditech / Green Tree, and BONY as set forth above within ¶¶1-35 and re-stated herein as though fully incorporated by reference, constitutes deceptive business practices in violation of N.J.S.A. 2C:21-7 for the Defendants made false or misleading written statements for the purpose of obtaining property, and false or misleading written statements for the purpose of promoting the sale of securities, and omitted information required by law to be disclosed in written documents relating to securities.

43.     The aforementioned acts by Defendants BANA, CHL, Ditech / Green Tree, and BONY as set forth above within ¶¶1-35 and re-stated herein as though fully incorporated by reference, constitutes tampering with or fabricating physical evidence in violation of N.J.S.A. 2C:28-6 for the defendants altered and or concealed records, documents, or other things of physical substance with purpose to impair its verity or availability in such proceedings or investigations; and the defendants made, devised, prepared, presented, offered or used articles, objects, records, documents or other things of physical substance knowing them to be false and with purpose to mislead a public servant who is engaged in such proceeding or investigation.

44.     The aforementioned acts by Defendants BANA, CHL, and BONY as set forth above within ¶¶1-35 and re-stated herein as though fully incorporated by reference, constitutes tampering with public records or information in violation of N.J.S.A. 2C:28-7 for the defendants knowingly made a false entry in, or false alteration of, any record, document or thing received or kept by, the government for information or record, and the Defendants made, presented, offered for filing, or used a record, document or thing knowing it to be false, and with purpose that it be taken as a genuine part of information or records.

45.     The aforementioned acts by Defendants BANA, CHL, and BONY as set forth above within ¶¶1-35 and re-stated herein as though fully incorporated by reference, constitutes frauds relating to public records and recordable instruments in violation of N.J.S.A. 2C:21-3 for the defendants offered a false instrument for filing, knowing the written instrument contains a false statement or false information, and offered or presented it to a public office or public servant with knowledge or belief that it will be filed with, registered or recorded in or otherwise become a part of the records of such public office or public servant.

46.     The aforementioned acts by Defendants BANA, CHL, and BONY as set forth above within ¶¶1-35 and re-stated herein as though fully incorporated by reference, constitutes securing execution of documents by deception in violation of N.J.S.A. 2C:21-16 for the defendants caused or induced the Plaintiff and others to execute instruments affecting, purporting to affect, or likely to affect the pecuniary interest of the Plaintiff by means of deception as to the contents of the instruments.

47.     The aforementioned acts by Defendants BANA, CHL, Ditech / Green Tree, and BONY as set forth above within ¶¶1-35 and re-stated herein as though fully incorporated by reference, constitutes knowledge inferred in violation of N.J.S.A. 2C:21-26 for the defendants

transported or possessed the Plaintiff's property in a fashion inconsistent with the ordinary or usual means of transportation or possession of such property and where the property is discovered in the absence of any documentation or other indicia of legitimate origin or right to such property.

48.     The aforementioned acts by Defendants BANA, CHL, Ditech / Green Tree, and BONY as set forth above within ¶¶1-35 and re-stated herein as though fully incorporated by reference, constitutes conspiracy in violation of N.J.S.A. 2C:5-2 for the defendants agreed with each other, and or other persons, that they or one or more of them will engage in conduct which constitutes such crime, and or they agreed to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

49.     The aforementioned acts by Defendants BANA, CHL, Ditech / Green Tree, and BONY as set forth above within ¶¶1-35 and re-stated herein as though fully incorporated by reference, constitutes forgery in violation of N.J.S.A. 2C:21-1 for the defendants, with purpose to defraud or injure the Plaintiff, with knowledge that they were facilitating a fraud or injury, they: (1) Altered and or changed instruments of another without their authorization; (2) made, completed, executed, authenticated, issued or transferred writings so that it purports to be the act of another who did not authorize that act or of a fictitious person, or to have been executed at a time or place or in a numbered sequence other than was in fact the case, or to be a copy of an original when no such original existed; or (3) Uttered writings which they knew to be forged in a manner specified above.

50.     The aforementioned acts by Defendants BANA, CHL, Ditech / Green Tree, and BONY as set forth above within ¶¶1-35 and re-stated herein as though fully incorporated by reference, constitutes impersonation and identity theft in violation of N.J.S.A. 2C:21-17 for the defendants obtained personal identifying information pertaining to the Mrs. Holder and used that

information, or assisted another person in using the information, in order to assume the identity of or represent themselves as Mrs. Holder, without the Plaintiff's authorization and with the purpose to fraudulently obtain or attempt to obtain a benefit or services by using the name of Mrs. Holder.

51.     The aforementioned acts by Defendants BANA, CHL, and BONY as set forth above within ¶¶1-35 and re-stated herein as though fully incorporated by reference, constitutes Theft of movable property by unlawful taking or disposition in violation of N.J.S.A. 2C:20-2 upon the Defendants unlawfully taking, or exercising unlawful control over, movable and or unmovable property of the Plaintiffs with purpose to deprive him thereof.

52.     The aforementioned acts by Defendants BANA, CHL, and BONY as set forth above within ¶¶1-35 and re-stated herein as though fully incorporated by reference, constitutes theft by deception in violation of N.J.S.A. 2C:20-4 upon the Defendants creation or reinforcing a false impression, including false impressions as to law, value, intention or other state of mind; upon preventing the Plaintiffs, State Court, and other authorities from acquiring information which would affect judgment of the fraud *in factum* "mortgage loans" in dispute, and ; upon failing to correct a false impression which the Defendants previously created or reinforced.

53.     The aforementioned acts by Defendants BANA, CHL, Ditech / Green Tree, and BONY as set forth above within ¶¶1-35 and re-stated herein as though fully incorporated by reference, constitutes Receiving stolen property in violation of N.J.S.A. 2C:20-7 upon the Defendants knowingly receiving movable and / or unmovable property of the Plaintiffs knowing that it has been stolen, or believing that it is probably stolen.

54.     The aforementioned acts by Defendants BANA, CHL, Ditech / Green Tree, and BONY as set forth above within ¶¶1-35 and re-stated herein as though fully incorporated by reference, constitutes mail fraud in violation of 18 U.S.C. §1341 for the defendants devised a

scheme to defraud, obtain money, or the subject property by means of false or fraudulent pretenses, representations, or promises, to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use counterfeit obligations, securities, for the purpose of executing such scheme or artifice, placed in post offices or authorized depository for mail matter, to be sent or delivered by the Postal Service, deposited, or caused to be deposited, to be sent or delivered by private or commercial interstate carrier, or knowingly caused to be delivered by mail or such carrier.

55.     The aforementioned acts by Defendants BANA, CHL, Ditech / Green Tree, and BONY as set forth above within ¶¶1-35 and re-stated herein as though fully incorporated by reference, constitutes fictitious name in violation of 18 U.S.C. §1342 for the defendants, for the purpose of conducting, promoting, or carrying on by means of the Postal Service, any scheme or device mentioned in section 1341, or any other unlawful business, used or assumed, or requested others to be addressed by, fictitious, false, or assumed titles, or names, other than their own proper name.

56.     The aforementioned acts by Defendants BANA, CHL, Ditech / Green Tree, and BONY as set forth above within ¶¶1-35 and re-stated herein as though fully incorporated by reference, constitutes wire fraud in violation of 18 U.S.C. §1343 for the defendants devised or intended to devise a scheme or artifice to defraud, for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmitted by means of wire in interstate commerce, writings for the purpose of executing such scheme or artifice.

57.     The aforementioned acts by Defendants BANA, CHL, Ditech / Green Tree, and BONY as set forth above within ¶¶1-35 and re-stated herein as though fully incorporated by reference, constitutes transportation of stolen goods, securities, moneys, and or articles used in

counterfeiting in violation of 18 U.S.C. § 2314 for the defendants transported, transmitted, or transferred in interstate commerce, securities of the value of $5,000 or more, knowing the same to have been stolen, converted or taken by fraud, and devised a scheme or artifice to defraud, for obtaining money or property from the Plaintiffs by means of false or fraudulent pretenses, representations, or promises, transported or caused to be transported interstate in the execution or concealment of a scheme or artifice to defraud the Plaintiffs of money or property having a value of $5,000 or more, with unlawful or fraudulent intent, transported in interstate commerce falsely made, forged, altered, or counterfeited securities knowing the same to have been falsely made, forged, altered, or counterfeited.

58.     The aforementioned acts by Defendants BANA, CHL, Ditech / Green Tree, and BONY as set forth above within ¶¶1-35 and re-stated herein as though fully incorporated by reference, constitutes interference with commerce by threats or violence in violation of 18 U.S.C. § 1951 for the defendants have: (a) obstructed, delayed, or affected commerce by robbery or extortion or attempted or conspired so to do, or committed or threatened physical removal of Plaintiffs from the subject property, and the taking of the subject property under color of official right.

59.     The aforementioned acts by Defendants BANA, CHL, Ditech / Green Tree, and BONY as set forth above within ¶¶1-35 and re-stated herein as though fully incorporated by reference, constitutes laundering of falsely made monetary instruments in violation of 18 U.S.C. § 1956 because the Defendants: (1) knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducted or attempted to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity, with (i) the intent to promote the carrying on of specified unlawful activity; or (ii) the intent to engage in

conduct constituting a violation of section 7201 or 7206 of the Internal Revenue Code of 1986; or knowing that the transaction is designed in whole or in part (i) to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity; or (ii) to avoid a transaction reporting requirement under State or Federal law.

60. The aforementioned acts by Defendants BANA, CHL, Ditech / Green Tree, and BONY as set forth above within ¶¶1-35 and re-stated herein as though fully incorporated by reference, constitutes engaging in monetary transactions in property derived from specified unlawful activity in violation of 18 U.S.C. § 1957 upon the Defendants knowingly engaging or attempting to engage in a monetary transaction in criminally derived property of a value greater than $10,000 and is derived from specified unlawful activity.

61. The aforementioned acts by Defendants BANA, CHL, Ditech / Green Tree, and BONY as set forth above within ¶¶1-35 and re-stated herein as though fully incorporated by reference, constitutes misprision of felony in violation of 18 U.S.C. § 4 for the defendants had knowledge of the actual commission of a felony cognizable by a court of the United States, and concealed said knowledge, and did not as soon as possible make known the same to some judge or other person in civil or authority under the United States.

62. The aforementioned acts by Defendants BANA, CHL, Ditech / Green Tree, and BONY as set forth above within ¶¶1-35 and re-stated herein as though fully incorporated by reference, constitutes conspiracy against rights in violation of 18 U.S.C. §241 for the defendants conspired to injure, oppress, threaten, or intimidate the Plaintiff in the free exercise or enjoyment of rights or privilege secured to Plaintiffs by the Constitution and laws of the United States, including but not limited to: (i) the right to contract; (ii) the right to own, maintain, and be secure in Plaintiff's property right from unlawful seizures; AND (iii) to be free of usury.

63.     The Plaintiffs aver that the aforementioned acts on the part of the defendants were intentional, willful, deliberate, wonton, reckless, actuated with forethought and malice, performed under color of law, without regard to the damage that these acts might cause the Plaintiffs.

64.     The acts by the Defendants violates N.J.S.A. 2C:41-1 et seq. and 18 USC §1962(c)), and has caused injury to the Plaintiffs as contemplated by N.J.S.A. 2C:41-4c, and 18 USC § 1964(c), in actual damages of emotional distress, loss of monies paid by the Plaintiffs towards a fraud in factum "mortgage transaction", and other costs to defend the Plaintiff's property.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs request that this Court enter judgment in their favor and against Defendants, as follows:

a.     Awarding Plaintiffs actual damages against Defendants;
b.     Awarding Plaintiffs damages for emotional distress against Defendants;
c.     Awarding Plaintiffs attorneys' fees and costs against Defendants;
d.     Awarding Plaintiffs punitive damages against Defendants;
e.     Awarding Plaintiffs treble damages against Defendants
f.     Imposing any other appropriate monetary sanctions against Defendants; and
g.     Any other relief that this Court deems just and proper.

**SECOND CAUSE OF ACTION**
**AGAINST – ALL DEFENDANTS**
**VIOLATION OF THE NEW JERSEY CONSUMER FRAUD ACT (N.J.S.A. 56:8-2);**
**ACTIONABLE PURSUANT TO N.J.S.A. 56:8-19;**

65.     The Plaintiffs adopt the factual allegations set forth above in ¶¶1-35 and Count One as though incorporated herein by reference.

66.     The Defendants designated in Count Two have each used or caused to be employed by other persons unconscionable commercial practices, deception, fraud, false pretenses, false promises, misrepresentations, and knowingly concealed, suppressed, and omitted material facts with intent that the Plaintiffs rely upon such concealment, suppression or omission, in connection with the "origination" of the "mortgage transaction' in dispute.

67.     The Plaintiffs aver the unfair, deceptive, and unlawful practices by the Defendants misled and deceived the Holder's, resulting in damages thereby, constituting unlawful practices in violation of N.J.S.A. 56:8-2, and has caused injury to Plaintiffs as contemplated by N.J.S.A. 56:8-19 in actual damages of emotional distress, loss of monies paid towards a *fraud in factum* "mortgage transaction", and other costs to defend Plaintiff's property and reputation.

68.     At all times relevant and material hereto, the "mortgage loan" in dispute was fraud in factum from its inception, none of the Defendants herein owned the debt as alleged, the Plaintiffs were a consumer of the Defendants' goods and services, and as such the conduct of the Defendants and the transaction was governed by the New Jersey Consumer Fraud Act ("NJCFA") N.J.S.A. 56:8-1 et seq..

69.     At all times relevant and material hereto the Defendants did violate the New Jersey Consumer Fraud Act by engaging in deceptive and fraudulent practices as stated above.

70.     The aforementioned unfair, deceptive, and unlawful practices by BANA, CHL, Ditech / Green Tree, and BONY as set forth above within ¶¶1-35  and re-stated herein as though fully incorporated by reference, were in violation of NJCFA for which the New Jersey Supreme Court in *Gonzalez v. Wilshire Credit Corp.* (August 29, 2011), held:

> "Lending institutions and their servicing agents are not immune from New Jersey's Consumer Fraud Act, N.J.S.A. §§ 56:8-1 to 56:8-195; they cannot prey on the unsophisticated, those with no bargaining power, those bowed down by a foreclosure judgment and desperate to keep their homes under seemingly any circumstances."

71.     In *Cox v. Sears Roebuck*, September 15, 1994 138 N.J. 2 A-123 September term 1993." the NJ Supreme Court held: "The amendment to the Consumer Fraud Act, *N.J. Stat. Ann.*

*§§ 56:8-1* to 20, provides for private causes of action, with an award of treble damages, attorneys' fees, and costs."

72.    Upon "strict scrutiny" application, the Court would be compelled to protect Plaintiff against blatant fraud being perpetrated by Defendants as well as the Court under the "color of law" and to do otherwise would be a travesty of justice.

73.    "Like most remedial legislation, the Consumer Fraud Act, *N.J. Stat. Ann. §§ 56:8-1* to 20, should be construed liberally in favor of consumers."

74.    "An improper debt or lien against a consumer fraud plaintiff may constitute a loss under the Consumer Fraud Act, *N.J. Stat. Ann. §§ 56:8-1* to 20, (the Act) because the consumer is not obligated to pay an indebtedness arising out of conduct that violates the Act."

75.    The actions of the Defendants, individually and/or jointly, were performed in direct contradiction to their promises of superior services and conduct, but instead for their own financial self-interests, in detriment to the rights and position of the Plaintiffs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs request that this Court enter judgment in their favor and against Defendants, as follows:

a.    Awarding Plaintiffs actual damages against Defendants;
b.    Awarding Plaintiffs damages for emotional distress against Defendants;
c.    Awarding Plaintiffs attorneys' fees and costs against Defendants;
d.    Awarding Plaintiffs punitive damages against Defendants;
e.    Awarding Plaintiffs treble damages against Defendants;
f.    Imposing any other appropriate monetary sanctions against Defendants; and
g.    Any other relief that this Court deems just and proper.

**THIRD CAUSE OF ACTION**
**AGAINST – BANA, DITECH / GREEN TREE, BONY AS TRUSTEE;**
**FEDERAL FAIR DEBT COLLECTION PRACTICES ACT**
**PURSUANT TO 15 U.S.C. §1692;**
**ACTIONABLE PURSUANT TO 15 U.S.C. §1692K**

76.     The Plaintiffs adopt the factual allegations set forth above in ¶¶1-35 along with Counts One through Two, as though fully incorporated herein by reference.

77.     The Defendants designated in Count Three have each acted in the capacity of debt collectors for the fraud in factum "mortgage loans" in dispute as defined by the Federal FDCPA, none of the Defendants have evidence of being a creditor for the "mortgage loan", and each Defendant has:  (i) made false representations of the character, amount, and legal status of the debts in dispute, and the services rendered or compensation which may be lawfully received by the defendants as debt collectors for the collection of the debts in dispute; (ii) made the representation or implication that nonpayment of the debts in dispute will result in the sale of the subject property; AND (iii) used false representations and deceptive means to collect or attempt to collect the debt in dispute by willfully misrepresenting a dba ("AWL") and Countrywide Bank as the lenders that suffered a loss of $488,000.00 and $61,000.00, respectively, and declaring that MERS and BONY as Trustee were the owners and holders of the 1st fraud in factum "mortgage loan", and that BANA and Ditech / Green Tree as the "owner and holder" of the 2nd fraud in factum mortgage loan in dispute, knowing otherwise to be true.

78.     The Plaintiffs aver that the unlawful debt collection practices by the Defendants constitutes false and misleading representations in violation of the Federal FDCPA and has caused injury to the Plaintiffs as contemplated by 15 U.S.C. §1692 et seq., in actual damages of emotional distress, loss of monies paid by the Plaintiffs towards a fraud *in factum* debts, and other costs to defend the Plaintiff's property and reputation.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs request that this Court enter judgment in their favor and against

Defendants, as follows:

    a.    Awarding Plaintiffs actual damages against Defendants;
    b.    Awarding Plaintiffs damages for emotional distress against Defendants;
    c.    Awarding Plaintiffs attorneys' fees and costs against Defendants;
    d.    Awarding Plaintiffs punitive damages against Defendants;
    e.    Imposing any other appropriate monetary sanctions against Defendants; and
    f.    Any other relief that this Court deems just and proper.

## FOURTH CAUSE OF ACTION
### AGAINST – BANA AND DITECH / GREEN TREE;
### VIOLATION OF THE FAIR CREDIT REPORTING ACT (THE "FCRA"),
### 15 U.S.C. § 1681, ET SEQ.

79.    The Plaintiffs adopt the factual allegations set forth above within ¶¶1-35 along with

Counts One through Three, as though fully incorporated herein by reference.

80.    Defendants have violated the Fair Credit Reporting Act (the "FCRA"), 15 U.S.C.

§ 1681, et seq..

81.    At all times pertinent hereto, the Defendants were a "person" as that term is defined

by 15 U.S.C. § 1681a(b).

82.    During the course of the issues in this matter, the Defendants reported false and

derogatory information to a number of credit reporting agencies regarding Plaintiff's account.

83.    Thus, the Defendants violated sections 1681n and 1681o of the FCRA by engaging

in the following conduct:

    a.    willfully and negligently reporting false derogatory information to various credit reporting agencies regarding Plaintiff' account;
    b.    willfully and negligently failing to conduct an investigation of the inaccurate information that Plaintiff disputed;
    c.    willfully and negligently failing to review all relevant information concerning Plaintiff' account provided to Defendants;
    d.    willfully and negligently failing to report the results of investigations to the relevant consumer reporting agencies;

e.   willfully and negligently failing to report the inaccurate status of the inaccurate information to all credit reporting agencies;

f.   willfully and negligently failing to properly participate, investigate, and comply with the reinvestigations that were conducted by any and all credit reporting agencies concerning the inaccurate information disputed by Plaintiff;

g.   willfully and negligently failing to provide any and all credit reporting agencies with the factual information and evidence that Plaintiff submitted to Defendants, and which proved that the information concerning Plaintiff' credit reports was inaccurate;

h.   willfully and negligently continuing to furnish and disseminate inaccurate and derogatory credit, account, and other information concerning Plaintiff to the credit reporting agencies and other entities; and

i.   willfully and negligently failing to comply with the requirements imposed on furnishers of information pursuant to 15 U.S.C. § 1581s-2(b).

84.   Defendants' conduct was a direct and proximate cause, as well as a substantial factor, in causing the serious injuries, damages, and harm to Mrs. Holder in this matter.

85.   Accordingly, Defendants have violated the FCRA and the Plaintiff is entitled to relief herein.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs request that this Court enter judgment in their favor and against Defendants, as follows:

a.   Awarding Plaintiffs actual damages against Defendants;

b.   Awarding Plaintiffs damages for emotional distress against Defendants;

c.   Awarding Plaintiffs attorneys' fees and costs against Defendants;

d.   Awarding Plaintiffs punitive damages and treble damages against Defendants;

e.   Imposing any other appropriate monetary sanctions against Defendants; and

f.   Any other relief that this Court deems just and proper.

**FIFTH CAUSE OF ACTION**
**AGAINST – BANA, BONY, & DITECH / GREEN TREE**
**CONTINUAL ACTS OF FRAUD**

86.   The Plaintiffs adopt the factual allegations set forth above in ¶¶1-35 along with Counts One through Four, as though fully incorporated herein by reference.

87.     The Defendants knew or should have known about, and willfully disregarded the consent order entered on April 13, 2011 by multiple Federal Agencies in In the Matter of: MERSCORP, Inc. and the Mortgage Electronic Registration Systems, Inc. (OCC No.AA-EC-11-20, Board of Governors, Docket Nos. 11-051-B-SC-1, 11-051-B-SC-2, FDIC-11-194b, OTS No. 11-040, FHFA No. EAP-11-01) prohibiting MERSCORP, its subsidiary MERS, MERSCORP's members and non-members from further engagement in unfair, deceptive, and unlawful practices related to the foreclosure of residential "mortgage loans" including, but not limited to, the creation of instruments asserting MERS through the latter's certifying officers transferred interest in "mortgage loans".

88.     The Defendants knew or should have known about, and willfully disregarded the consent order entered on April 13, 2011 by  In the Matter of Bank of America, N.A. (Order No.: AA-EC-11-12) prohibiting BANA from further engagement in unfair, deceptive, and unlawful practices related to the foreclosure of residential "mortgage loans" including, but not limited to,: (1) creating falsely made – forged – falsely acknowledged instruments misrepresenting the transfer and / or assignment of "mortgage loans", displaying imposters, and false notarizations; (2) recording with local recorder of deeds and filing in judicial proceedings falsely made – forged – falsely acknowledged instruments; (3) commencing judicial foreclosure actions by misrepresenting the ownership of "mortgage loans"; AND (4) submitting false pleadings and certifications in judicial and bankruptcy proceedings.

89.     The Defendants knew or should have known about, and willfully disregarded the consent order entered on April 4, 2012 in consent judgment entered in United States of America, et.al. v. Bank of America N.A., et al., (Docket No. 1:12-cv-00361 RMC), a civil action which the NJ AG appeared on behalf of the Plaintiff and similarly situated victims, prohibiting BANA from

further engagement in unfair, deceptive, and unlawful practices related to the foreclosure of residential "mortgage loans" including, but not limited to,: (1) creating falsely made – forged – falsely acknowledged instruments misrepresenting the transfer and / or assignment of "mortgage loans", displaying imposters, and false notarizations; (2) recording with local recorder of deeds and filing in judicial proceedings falsely made – forged – falsely acknowledged instruments; (3) commencing judicial foreclosure actions by misrepresenting the ownership of "mortgage loans"; AND (4) submitting false pleadings and certifications in judicial and bankruptcy proceedings.

90.    On April 23, 2015, Defendant Ditech / Green Tree became obligated to reframe from further engagement in illegal debt collection practices, unfair – deceptive modification practices, and misrepresentations of account status to consumers and credit reporting agencies as a result the stipulated order for permanent injunction and monetary judgment entered in <u>Federal Trade Commission and Consumer Financial Protection Bureau, Plaintiffs v. Green Tree Servicing LLC</u> (Case No. 0:15-cv-02064) form the United States District Court for the District of Minnesota.

91.    Hence, the Plaintiffs assert the aforementioned acts by the Defendants set forth above within ¶¶1-35 and re-stated herein as though fully incorporated by reference, were intentional, willful, deliberate, wonton, reckless, actuated with forethought and malice, performed under color of law, without regard to the damage that these acts might cause the Plaintiffs, and with disregard for the aforementioned consent orders and judgments.

<b>PRAYER FOR RELIEF</b>

**WHEREFORE**, Plaintiffs request that this Court enter judgment in their favor and against the Defendants, as follows:

    a.    Awarding Plaintiffs actual damages against Defendants;
    b.    Awarding Plaintiffs damages for emotional distress against Defendants;
    c.    Awarding Plaintiffs attorneys' fees and costs against Defendants;

    d.      Awarding Plaintiffs punitive damages against Defendants in the amount of $1,000,000.00 per violation and $5,000,000.00 each occurrence pursuant to the April 4, 2012 consent judgment in <u>United States of America, et.al. v. Bank of America N.A., et al., (Docket No. 1:12-cv-00361 RMC)</u>;

    e.      Awarding Plaintiffs punitive damages against Ditech / Green Tree for each violation and occurrence in violation of the injunction entered on April 23, 2015 in <u>Federal Trade Commission and Consumer Financial Protection Bureau, Plaintiffs v. Green Tree Servicing LLC</u> (Case No. 0:15-cv-02064).;

    f.      Imposing any other appropriate monetary sanctions against Defendants; and

    g.      Any other relief that this Court deems just and proper.

**SIXTH CAUSE OF ACTION**
**AGAINST – ALL DEFENDANTS;**
**UNJUST ENRICHMENT**

92.      The Plaintiffs adopt the factual allegations set forth above in ¶¶1-35 along with Counts One through Five, as though fully incorporated herein by reference.

93.      In establishing a claim for unjust enrichment, "a plaintiff must show both that defendant received a benefit and that retention of that benefit without payment would be unjust." *VRG Corp. v. GKN Realty Corp.,* 135 NJ. 539, 554 (1994).

94.      As a result of its misrepresentations underlying the fraud in factum "mortgage loan" in dispute, and or any modifications thereof, the Defendants have been unjustly enriched at the expense of the Plaintiff.

95.      It is clear that Defendants, either through intentional actions or gross negligence, are attempting to gain possession of Plaintiff's house through an unlawful Sheriff sale.

96.      Accordingly, Defendants are attempting to receive a benefit, unjustly, through the sale of Plaintiff's home.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs request that this Court enter judgment in their favor and against Defendants, as follows:

    a.      Awarding Plaintiff actual damages against Defendants;

62

b.     Awarding Plaintiff damages for emotional distress against Defendants;
c.     Awarding Plaintiff attorneys' fees and costs against Defendants;
d.     Awarding Plaintiff punitive damages against Defendants;
e.     Imposing any other appropriate monetary sanctions against Defendants; and
f.     Any other relief that this Court deems just and proper.

## SEVENTH CAUSE OF ACTION
## AGAINST – ALL DEFENDANTS;
## NEGLIGENT MISREPRESENTATION

97.    The Plaintiffs adopts the factual allegations set forth above in ¶¶1-35, along with Counts One through Six as though fully incorporated herein by reference.

98.    The Defendants to Count Seven have each made negligent and false representations as to the character, legality, ownership, and possession of the "mortgage transaction" in dispute without any reasonable ground for believing their representations to be true, with the intent to induce the Plaintiff into believing the defendant's representations, causing the Plaintiffs to act upon as the defendant's desires, and causing injury to the Plaintiffs in actual damages of emotional distress, loss of monies paid by the Plaintiffs towards a fraud *in factum* "mortgage transaction", and other costs to defend the Plaintiffs' property and reputation.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs request that this Court enter judgment in their favor and against Defendants, as follows:

a.     Awarding Plaintiffs actual damages against Defendants;
b.     Awarding Plaintiffs damages for emotional distress against Defendants;
c.     Awarding Plaintiffs attorneys' fees and costs against Defendants;
d.     Awarding Plaintiffs punitive damages against Defendants;
e.     Imposing any other appropriate monetary sanctions against Defendants; and
f.     Any other relief that this Court deems just and proper.

## EIGHTH CAUSE OF ACTION
## AGAINST – ALL DEFENDANTS;
## FRAUDULENT CONCEALMENT

99.     The Plaintiffs adopt the factual allegations set forth above in ¶¶1-35, along with Counts One through Seven as though fully incorporate herein by reference.

100.    The Defendant CHL: (1) fraudulently concealed from Plaintiffs the actual source of the monies declared loaned to Plaintiffs on October 14, 2005 upon the Defendant misrepresenting its dba ("AWL") and affiliate company Countrywide Bank as the lenders that suffered a loss of $488,000.00 and $61,000.00, respectively, on October 14, 2005 towards the "mortgage loans" in dispute knowing otherwise to be true; (2) fraudulently concealed that the transactions in dispute were securities transaction, not traditional mortgage loans; (3) fraudulently concealed the real capabilities (and lack thereof) of MERS upon misrepresenting that MERS was the "mortgagee" under the security instruments in dispute with the purported authority to take any and all actions on behalf of the dba ("AWL") and Countrywide Bank as the purported lenders, and the lender's successors and assigns knowing otherwise to be true; (4) fraudulently concealed that the "mortgage loans" in dispute included an electronic note instruments that were created by the Defendant without the Plaintiff's knowledge and / or consent, and by forging Mrs. Holder's electronic signatures; AND (5) fraudulently concealed that Mrs. Holder's social security number was being shared with non-party MERSCORP without Plaintiff's knowledge and / or consent in order to register the aforementioned forged – stolen electronic notes upon the MERS® eRegistry.

101.    The remaining Defendants to Count Eight have each fraudulently concealed from the Plaintiffs: (i) material facts underlying the character, legality, ownership, and possession of the "mortgage transactions" in dispute, (ii) with knowledge of the material facts, knowing material facts were not within reasonably diligent attention, observation, and judgment of the Plaintiffs,

(iii) while the defendants suppressed and or concealed the material facts with the intention that the Plaintiffs be misled as to the character, legality, ownership, and possession of the "mortgage transactions" in dispute, (iv) the Plaintiffs were reasonably so misled; and (v) causing injury to the Plaintiffs in actual damages of emotional distress, loss of monies paid by the Holder's towards *fraud in factum* "mortgage transactions", and other costs to defend the Plaintiff's property and reputation.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs request that this Court enter judgment in their favor and against Defendants, as follows:

> a.   Awarding Plaintiffs actual damages against Defendants;
> b.   Awarding Plaintiffs damages for emotional distress against Defendants;
> c.   Awarding Plaintiffs attorneys' fees and costs against Defendants;
> d.   Awarding Plaintiffs punitive damages against Defendants;
> e.   Imposing any other appropriate monetary sanctions against Defendants; and
> f.   Any other relief that this Court deems just and proper.

**<u>NINTH CAUSE OF ACTION</u>**
**AGAINST – ALL DEFENDANTS;**
**CONSTRUCTIVE FRAUD**

102.   The Plaintiffs adopt the factual allegations set forth above in ¶¶1-35, along with Counts One through Eight as though fully incorporate herein by reference.

103.   The Defendants to Count Nine have each: (i) made false representations, (ii) as to the character, legality, ownership, and possession of the "mortgage transactions" in dispute along with the authenticity of the instruments recorded with the Middlesex County Clerk and / or submitted to the State Court in Docket No.: F-038316-13 and F-010402-14 by the Defendants and / or through the latter's agents; (iii) for the purpose of inducing the Plaintiffs to reply on such representations, (iv) for which the Plaintiffs justifiably relied, and (v) caused injury to the Plaintiffs in actual damages of emotional distress, loss of monies paid by the Plaintiffs towards a *fraud in*

65

*factum* "mortgage transaction", and other costs to defend the Plaintiff's property and reputation.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs request that this Court enter judgment in their favor and against

Defendants, as follows:

a.    Awarding Plaintiffs actual damages against Defendants;
b.    Awarding Plaintiffs damages for emotional distress against Defendants;
c.    Awarding Plaintiffs attorneys' fees and costs against Defendants;
d.    Awarding Plaintiffs punitive damages against Defendants;
e.    Imposing any other appropriate monetary sanctions against Defendants; and
f.    Any other relief that this Court deems just and proper.

## TENTH CAUSE OF ACTION
## AGAINST – ALL DEFENDANTS;
## CIVIL AIDING AND ABETTING FRAUD

104.    The Plaintiffs adopt the factual allegations set forth above in ¶¶1-35, along with

Counts One through Nine as though fully incorporate herein by reference.

105.    The Defendants to Count Ten have aided and abetted the unfair, deceptive, and

unlawful in order to unlawfully procure monies from the Plaintiffs and /or the attempted theft of

Plaintiff's home by unfair, deceptive, and unlawful practices as set forth above within ¶¶1-35 and

re-stated herein as though fully incorporated by reference.

106.    The Plaintiffs assert the aforementioned acts on the part of the defendants were

intentional, willful, deliberate, wonton, reckless, actuated with forethought and malice, performed

under color of law, without regard to the damage that these acts might cause the Plaintiffs, and has

caused injury to the Plaintiffs in actual damages of emotional distress, loss of monies paid by the

Plaintiffs towards a *fraud in factum* "mortgage transaction", and other costs to defend the

Plaintiff's property and reputation.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs request that this Court enter judgment in their favor and against Defendants, as follows:

a.   Awarding Plaintiffs actual damages against Defendants;
b.   Awarding Plaintiffs damages for emotional distress against Defendants;
c.   Awarding Plaintiffs attorneys' fees and costs against Defendants;
d.   Awarding Plaintiffs punitive damages against Defendants;
e.   Imposing any other appropriate monetary sanctions against Defendants; and
f.   Any other relief that this Court deems just and proper.

### ELEVENTH CAUSE OF ACTION
### AGAINST – ALL DEFENDANTS;
### WILLFUL AND WANTON GROSS NEGLIGENCE

107.   The Plaintiffs adopt the factual allegations set forth above in ¶¶1-35, along with Counts One through Ten as though fully incorporate herein by reference.

108.   The Defendant CHL: (1) willfully and wantonly misrepresented its dba ("AWL") and its affiliate Countrywide Bank as the lenders that suffered a loss of $488,000.00 and $61,000.00, respectively, on October 14, 2005 towards the "mortgage loans" in dispute knowing otherwise to be true; (2) willfully and wantonly created and recorded the mortgage instruments in dispute by misrepresenting that MERS was the "mortgagee" under the security instrument in dispute with the purported authority to take any and all actions on behalf of the dba ("AWL") and Countrywide Bank as the respective lenders, and the latter's successors and assigns knowing otherwise to be true; (3) willfully and wantonly created and sold two electronic note instruments without the Plaintiff's knowledge and / or consent, and by forging Mrs. Holder's electronic signature; AND (4) willfully and wantonly shared Mrs. Holder's social security number with non-party MERSCORP without Plaintiff's knowledge and / or consent in order to register the aforementioned forged – stolen electronic note instruments upon the MERS® eRegistry.

109.   The remaining Defendants to Count Eleven have willfully and wantonly engaged

in unfair, deceptive, and unlawful practices in order to unlawfully procure monies from the Plaintiffs and /or illegally take possession of Plaintiff's home by unfair, deceptive, and unlawful practices as set forth above within ¶¶1-35 and re-stated herein as though fully incorporated by reference.

110.    The Plaintiffs assert the aforementioned acts on the part of the Defendants were intentional, willful, deliberate, wonton, reckless, actuated with forethought and malice, performed under color of law, without regard to the damage that these acts might cause the Plaintiffs, and has caused injury to the Plaintiffs in actual damages of emotional distress, loss of monies paid by the Plaintiffs towards a *fraud in factum* "mortgage transaction", and other costs to defend the Plaintiff's property and reputation.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs request that this Court enter judgment in their favor and against Defendants, as follows:

a.    Awarding Plaintiffs actual damages against Defendants;
b.    Awarding Plaintiffs damages for emotional distress against Defendants;
c.    Awarding Plaintiffs attorneys' fees and costs against Defendants;
d.    Awarding Plaintiffs punitive damages against Defendants;
e.    Imposing any other appropriate monetary sanctions against Defendants; and
f.    Any other relief that this Court deems just and proper.

## TWELTH CAUSE OF ACTION
### AGAINST – ALL DEFENDANTS;
### CIVIL CONSPIRACY TO DEFRAUD

111.    The Plaintiffs adopt the factual allegations set forth above in ¶¶1-35, along with Counts One through Eleven as though fully incorporate herein by reference.

112.    The Defendants to Count Twelve have conspired together to unlawfully procure monies from the Plaintiffs and /or the attempted theft of Plaintiff's home by unfair, deceptive, and unlawful practices as set forth above within ¶¶1-35 and re-stated herein as though fully

incorporated by reference.

113.    The Plaintiffs assert the aforementioned acts on the part of the Defendants were intentional, willful, deliberate, wonton, reckless, actuated with forethought and malice, performed under color of law, without regard to the damage that these acts might cause the Plaintiffs, and has caused injury to the Plaintiffs in actual damages of emotional distress, loss of monies paid by the Plaintiffs towards a *fraud in factum* "mortgage transaction", and other costs to defend the Plaintiff's property and reputation.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs request that this Court enter judgment in their favor and against Defendants, as follows:

   a.    Awarding Plaintiffs actual damages against Defendants;
   b.    Awarding Plaintiffs damages for emotional distress against Defendants;
   c.    Awarding Plaintiffs attorneys' fees and costs against Defendants;
   d.    Awarding Plaintiffs punitive damages against Defendants;
   e.    Imposing any other appropriate monetary sanctions against Defendants; and
   f.    Any other relief that this Court deems just and proper.

**THIRTEEN CAUSE OF ACTION**
**AGAINST – ALL DEFENDANTS;**
**UNLAWFUL CONVERSION**

114.    The Plaintiffs adopt the factual allegations set forth above in ¶¶1-35, along with Counts One through Twelve as though fully incorporate herein by reference.

115.    The Defendants to Count Thirteen used false pretenses to fraudulently induce the Holder's into executing the fraud *in factum* "transaction" in dispute dated October 14, 2005 by: (i) misrepresenting that a dba ("AWL") and Countrywide Bank were lenders suffering a loss of $488,000.00 and $61,000.00, respectively, on October 14, 2005 while, simultaneously, omitting the actual money source from the Plaintiffs and the critical documents signed by the Plaintiffs.; (ii) misrepresenting the undertaking as a traditional residential "mortgage loan", while concealing

and omitting from the Plaintiffs that the transaction was actually a securities transaction; (iii) illegally creating two electronic notes by forging Mrs. Holder's electronic signature without the Plaintiff's knowledge and consent; AND / OR (iv) creating MBS', CDO's, derivatives contracts, and rehypothecating the Plaintiff's collateral by way of the aforementioned forged and stolen electronic note to undisclosed parties.

116.   The Plaintiffs assert the aforementioned acts on the part of the Defendants were intentional, willful, deliberate, wonton, reckless, actuated with forethought and malice, performed under color of law, without regard to the damage that these acts might cause the Plaintiffs, and has caused injury to the Plaintiffs in actual damages of emotional distress, loss of monies paid by the Plaintiffs towards a *fraud in factum* "mortgage transaction", and other costs to defend the Plaintiff's property and reputation.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs request that this Court enter judgment in their favor and against Defendants, as follows:

a.   Awarding Plaintiffs actual damages against Defendants;
b.   Awarding Plaintiffs damages for emotional distress against Defendants;
c.   Awarding Plaintiffs attorneys' fees and costs against Defendants;
d.   Awarding Plaintiffs punitive damages against Defendants;
e.   Imposing any other appropriate monetary sanctions against Defendants; and
f.   Any other relief that this Court deems just and proper.

**FOURTEENTH CAUSE OF ACTION**
**AGAINST – BANA, DITECH / GREEN TREE, BONY AS TRUSTEE;**
**DEFAMATION**

117.   The Plaintiffs adopt the factual allegations set forth above in ¶¶1-35, along with Counts One through Thirteen as though fully incorporate herein by reference.

118.    At all times relevant herein, Defendants have published statements both orally and through writing to various credit reporting agencies, collection agencies, and/or attorneys that are false and negative representations concerning Mrs. Holder's credit information and history.

119.    At a minimum, Defendants have published these statements each time Mrs. Holder has reached out to Defendants and each time other credit reporting agencies reached out to Defendant and each time a credit reporting agency has reinvestigated any dispute raised by Mrs. Holder, including but not limited to, the disputes identified herein.

120.    The statements made by Defendants are false, as Plaintiff never actually defaulted on any debt stemming from the fraud in factum "mortgage loan" in dispute.

121.    Defendants have published these statements to a number of credit reporting agencies, including the three major credit bureaus.

122.    Defendants knew, or should have known, that the statements that it made were false when made and that it had no factual basis for making the statements that it did, as Mrs. Holder had notified Defendants that the statements were false for the aforementioned reasons and, nevertheless, Defendants continue to publish such statements up to and through the present time.

123.    The written statements and publications are libel per se.

124.    The oral statements and publications are slander per se.

125.    In addition, and despite the repeated notices from Plaintiff, Defendants have acted with malice by failing to communicate the information provided to it by Mrs. Holder to credit reporting agencies when responding to the reinvestigation attempts of such credit reporting agencies.

126.    The conduct of Defendants was a direct and proximate cause, as well as a substantial factor, in bringing about the serious injuries, damages, and harm to Plaintiff that are

outlined more fully above and, as a result, Defendants are liable to compensate Mrs. Holder for

the full amount of actual, compensatory, and punitive damages, as well as other such relief, as

permitted by law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs request that this Court enter judgment in their favor and against

Defendants, as follows:

- a.   Awarding Plaintiffs actual damages against Defendants;
- b.   Awarding Plaintiffs damages for emotional distress against Defendants;
- c.   Awarding Plaintiffs attorneys' fees and costs against Defendants;
- d.   Imposing any other appropriate monetary sanctions against Defendants; and
- e.   Any other relief that this Court deems just and proper.

### FIFTEENTH CAUSE OF ACTION
### AGAINST – ALL DEFENDANTS;
### VIOLATION OF TILA & RESPA

127.   The Plaintiffs adopt the factual allegations set forth above in ¶¶1-35, along with

Counts One through Fourteen as though fully incorporate herein by reference.

128.   Defendant CHL, a non-depository institution, and deceptively using the name of a

dba (AWL) and Defendant's affiliate (Countrywide Bank) as Plaintiff's purported lender, willfully

omitted and concealed from the Holder's that CHL was being compensated by a third-party

financier in return for CHL "originating" the "mortgage loan" in dispute in the name of

Defendant's dba ("AWL") and affiliate company (Countrywide Bank), while CHL simultaneously

collected fees from the Holder's in violation of 15 U.S.C. § 1639b(c).

129.   Defendants BANA, BONY as Trustee, and Ditech / Green Tree failed to provide

the Plaintiffs with the "Notice of Sale / Transfer of Ownership" of the 1st and 2nd mortgage loans

as required under 15 U.S.C. § 1641(g), or the communication provided was materially false and /

or defective.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs request that this Court enter judgment in their favor and against

Defendants, as follows:

      a.    Awarding Plaintiffs any and all damages against Defendants allowable by law;

      b.    Awarding Plaintiffs attorneys' fees and costs against Defendants;

      c.    Imposing any other appropriate monetary sanctions against Defendants; and

      d.    Any other relief that this Court deems just and proper.

<u>SIXTEENTH CAUSE OF ACTION</u>
**AGAINST – BANA AND BONY AS TRUSTEE;**
**UNLAWFUL FORECLOSURE**

130.    The Plaintiffs adopt the factual allegations set forth above in ¶¶1-35 along with Counts One through Fifteen as though fully incorporate herein by reference.

131.    Defendants knew, should have known, and willfully commenced a foreclosure debt collection action in the State Court by: (1) misrepresenting the character, legality, ownership, and possession of the "mortgage transactions" in dispute; (2) omitting and concealing the existence and location of the illegally created – forged – and stolen electronic notes that was made part of the fraud in factum "mortgage loans"; AND (3) creating – presenting falsely made – forged – and / or falsely acknowledged instruments (i.e. "assignments", "certifications", etc.) displaying misrepresentations of fact, imposters, and / or false acknowledgments.

132.    The Plaintiff avers that the unfair, deceptive, and unlawful foreclosure practices by the Defendants displays their willful and wanton disregard for the consent orders and judgment(s) entered on April 13, 2011 in <u>In the Matter of: MERSCORP, Inc. and the Mortgage Electronic Registration Systems, Inc.</u> (OCC No.AA-EC-11-20, Board of Governors, Docket Nos. 11-051-B-SC-1, 11-051-B-SC-2, FDIC-11-194b, OTS No. 11-040, FHFA No. EAP-11-01) and <u>In the Matter of Bank of America, N.A.</u> (Order No.: AA-EC-11-12), and on April 4, 2012 in <u>United States of</u>

73

America, et.al. v. Bank of America N.A., et al., (Docket No. 1:12-cv-00361 RMC).

133. The Defendants' conduct was a direct and proximate cause, as well as a substantial factor, in bringing about the serious injuries, damages, and harm to Plaintiffs that are outlined more fully above and, as a result, Defendants are liable to compensate the Holder's for the full amount of actual, compensatory, and punitive damages, as well as other such relief, as permitted by law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs request that this Court enter judgment in their favor and against Defendants, as follows:

a.   Awarding Plaintiffs actual damages against Defendants;
b.   Awarding Plaintiffs damages for emotional distress against Defendants;
c.   Awarding Plaintiffs attorneys' fees and costs against Defendants;
d.   Awarding Plaintiffs punitive damages against Defendants;
e.   Imposing any other appropriate monetary sanctions against Defendants;
f.   Voiding of the security instrument in dispute.;
g.   Voiding of the obligation in dispute.; and
h.   Any other relief that this Court deems just and proper.

## SEVENTEENTH CAUSE OF ACTION
### AGAINST – BANA, DITECH / GREEN TREE, BONY AS TRUSTEE; HARASSMENT

134. The Plaintiffs adopt the factual allegations set forth above in ¶¶1-35, along with Counts One through Sixteen as though fully incorporate herein by reference.

135. The unfair, deceptive, and illegal practices by the in their attempted extortion of monies from Plaintiffs towards the unlawful debts in dispute, and the attempted theft of the subject property upon commencing two illegal foreclosure debt collection actions in the State Court in Docket No.: F-038316-13 and F-010402-14 upon creating, recording, trafficking, and / or filing falsely made instruments and perjured statements, constitutes harassment.

136. The Plaintiffs assert the aforementioned acts on the part of the defendants were intentional, willful, deliberate, wonton, reckless, actuated with forethought and malice, performed

under color of law, without regard to the damage that these acts might cause the Holder's.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs request that this Court enter judgment in their favor and against

Defendants, as follows:

a.   Awarding Plaintiffs actual damages against Defendants;
b.   Awarding Plaintiffs damages for emotional distress against Defendants;
c.   Awarding Plaintiffs attorneys' fees and costs against Defendants;
d.   Awarding Plaintiffs punitive damages against Defendants;
e.   Imposing any other appropriate monetary sanctions against Defendants; and
f.   Any other relief that this Court deems just and proper.

## EIGHTEEN CAUSE OF ACTION
### AGAINST – BONY AS TRUSTEE AND DITECH / GREEN TREE; QUIET TITLE

137.   The Plaintiffs adopt the factual allegations set forth above in ¶¶1-35, along with

Counts One through Seventeen as though fully incorporate herein by reference.

138.   N.J.S.A. 2A:62-1 permits a person "*in the peaceable possession of lands*" to bring

an action to "*clear up all doubts and disputes*" concerning some other person's claim to "*a lien or

encumbrance thereon.*"

139.   There is a dispute as to whether any of the Defendants are legally entitled and

parties in possession of the 1st and 2nd note and mortgage instruments in dispute, the legality of the

transactions from which the instruments derive, and whether any of the Defendants have any right

or interest in the property based upon their purported rights and possession of fraud *in factum*

instruments.

140.   Plaintiffs seek clarification of the validity or reach of their title in circumstances

that otherwise preclude a forum for the resolution of such a dispute, pursuant to N.J.S.A. 1A:62-

1.

141.     At all times relevant hereto, Defendants and other entities related to Defendants have claimed an interest and/or estate in the Property adverse to Plaintiff.

142.     Specifically, the Defendants allege and/or have alleged that they have some kind of underlying interest in the Property upon Defendants' reliance upon the aforementioned fraud in factum "security instruments" in dispute that was recorded by the Middlesex County Clerk on November 16, 2005 by falsely asserting that MERS as the purported "nominee" for a dba (AWL) and Countrywide Bank as the purported lenders, and the lender's successors and assigns, were transferred an interest in the Plaintiff's property knowing otherwise to be true.

143.     Plaintiffs, therefore, allege that, upon information and belief, none of the Defendants herein hold a perfected and/or secured interest and/or claim in the Property and, as such, Defendants are estopped and precluded from asserting any claim against Plaintiffs' estate.

144.     There is currently no other forum for an adjudication of the dispute herein and there are no other adequate remedies at law.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs request that this Court enter judgment in their favor and against Defendants, as follows:

a.     Awarding Plaintiffs actual damages against Defendants;
b.     Awarding Plaintiffs damages for emotional distress against Defendants;
c.     Awarding Plaintiffs attorneys' fees and costs against Defendants;
d.     Awarding Plaintiffs punitive damages against Defendants;
e.     Imposing any other appropriate monetary sanctions against Defendants; and
f.     Any other relief that this Court deems just and proper.

**NINETEENTH CAUSE OF ACTION**
**DECLARATORY RELIEF PURSUANT TO N.J.S.A. 12A:3-305**

145.     The Plaintiffs adopt the factual allegations set forth above in ¶¶1-35, along with Counts One through Eighteen as though fully incorporate herein by reference.

146.     The Plaintiffs re-aver that the 1st and 2nd mortgage loans in dispute are the product of fraud *in factum*, absence negligence on part of the Holder's, and fraud *in factum* is a good defense even against a holder in due course, a status of which none of the Defendants can claim and prove.  See *Amsterdam v. De Paul*, 70 N.J. Super. 196 (1961) 175 A.2d 219: "…A negotiable instrument which is the product of fraud in the factum, unaccompanied by negligence, as distinguished from an instrument which is the product of fraud *200 in the treaty, is void, and not merely voidable.  As stated in 17 C.J.S. Contracts § 140, p. 495: "Where some trick is used to substitute another instrument for the one which it is intended to sign, as where a note is substituted for a receipt, and in like cases, the signature has no legal effect, * * *. Hence there is no agreement which can give rights to anyone, except where the signer is estopped by negligence or otherwise to set up the truth as against bona fide third persons * * *.""".

147.     As set forth within N.J.S.A. § 12A:3-305. Defenses and claims in recoupment, that states in part, that: "(a) Except as otherwise provided in this section, the right to enforce the obligation of a party to pay an instrument is subject to the following: (1) a defense of the obligor based on (i) infancy of the obligor to the extent it is a defense to a simple contract, (ii) duress, lack of legal capacity, or illegality of the transaction which, under other law, nullifies the obligation of the obligor, (iii) fraud that induced the obligor to sign the instrument with neither knowledge nor reasonable opportunity to learn of its character or its essential terms,…".

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs request that this Court enter judgment in their favor and against Defendants, as follows:

        a.     Voiding of the security instruments in dispute.
        b.     Voiding of the obligations in dispute.; and
        c.     Any other relief that this Court deems just and proper.

## CLAIMS RESERVED

The Plaintiffs herein reserves all claims against non-parties to this complaint that are not designated as Defendants in this matter, allowing the Plaintiffs an opportunity to discover all relevant facts and any and all claims against the non-parties.

## EQUITABLE TOLLING

The Plaintiffs herein invoke equitable tolling in order to preserve any and all claims recently discovered by the Plaintiffs, and or the conduct complained is continuous.


                                            __/s/ Joshua Thomas, Esq._____
                                            Joshua Thomas, Esq.
                                            *Attorneys for Plaintiff,*

Dated: